MARY LUCINDA BOSLEY, HENRY BOSLEY, MARY JANE DAVIS, SALLY ANN DAVIS, JAMES BOSLEY AND MELDRID BOSLEY, (INFANTS,) BY THEIR GUARDIAN AND NEXT FRIEND JOHN BOSLEY, AND JOHN BOSLEY SON OF THE SAID JOHN, *v.* MARGARET E. WYATT, EXECUTRIX OF ELIZABETH N. BOSLEY, DECEASED.

James Bosley, in his will, after sundry specific devises and bequests, devised and bequeathed all his lands and other real estate in Baltimore, Cecil, and Alleghany counties, in Maryland, and also in Florida, and his house and lot in Santa Croix, and all the real estate he might have elsewhere, to his wife Elizabeth, her heirs and assigns, in trust to sell the same and divide the net proceeds thereof, with all the residue of his estate, equally between herself and the children of his brother.

After making his will, he sold all of the lands, particularly mentioned in the residuary clause of the will above stated, except some lands lying in Baltimore county. At the time of making the codicil hereafter-mentioned, he held some of the proceeds of these sales in bonds and other securities, and with the residue had purchased other property.

He afterwards made a codicil, by which he devised his summer residence, in Baltimore county, to his wife, and also the securities he held for the lands sold in Cecil county, and directed all the property he had acquired after the date of his will to be sold, and the proceeds to be equally divided between his wife and her sister Margaret. Then followed a residuary clause in the following words:

"Lastly, my pew in St. Paul's Church and all my other property, real or personal, and all money in bank belonging to me at the time of my decease, I give, devise and bequeathe unto my said wife Elizabeth and her heirs forever; and I ratify and confirm my said last will in every thing except where the same is hereby revoked and altered as aforesaid."

The residuary clause in this codicil is inconsistent with that in the will, and consequently revokes it. But the devise of the property, specifically mentioned in the will, is not revoked by the clause in the codicil.

After the execution of the codicil, the testator agreed to lease some land for the term of ninety-nine years, renewable forever, a ground rent being reserved upon the same. The lessee was to pay cash for a part, and the residue of the purchase-money was to remain on interest, as ground rent, which the lessee could extinguish at any time by the payment of the principal sum.

This property was a part of that which was specifically mentioned in the will, and not revoked by the clause in the codicil.

But the conduct of the testator, in making this agreement, so altered the condition of the property that it amounted to a revocation of the devise, and manifests an intention on his part, when taken in connection with other circumstances of the case, to give it to his wife under the residuary clause in the codicil.

THIS was an appeal from the Circuit Court of the United States for the District of Maryland.

The bill was filed by the plaintiffs in error, who were the children of Dr. John Bosley, mentioned in the will of James Bosley.

That part of the will which gave occasion to the controversy is stated in the opinion, as are also the material facts in the case.

The Circuit Court decided that the residuary devise in the will was revoked by the residuary clause in the codicil; that the devise of the property, specifically mentioned in the will, was not revoked by the clause in the codicil, and ordered an account to be taken of such part as remained subject to the trust, one half of the proceeds whereof to be paid over to the complainants; and that the testator's agreement, made after the date of the will and the codicil, to lease a part of that real estate for a term of ninety-nine years, the principal sum payable at the option of the lessee, operated to revoke the devise as to that part.

From this decree, the complainants appealed to this court.

It was argued by M. Mayer, for the appellants, and Mr. Campbell and Mr. Johnson, for the appellees.

Mr. Mayer, for the appellants, made the following points.

1. The final clause of the codicil institutes no new residuary devisee and legatee; and the words supposed to effect that, are not the appropriate, nor any constructive phrase, for a residuary disposition in a will; and those words (which are, "all other my property, real or personal,") must be construed either — 1st, to comprise all property "other" than the pew, and so to purport to annul all devises and bequests of will and codicil,

except those in favor of Mrs. Bosley; which result must condemn the paragraph as incongruous and absurd; or, 2dly, to point to only property *ejusden generis* with the pew, and with the real property just in a preceding clause given to Mrs. Bosley and Miss Noel, and being the acquisitions subsequent to the date of the will; or, 3dly, must be rejected altogether as incapable of any consistent or reasonable application; or, as militating against the general intent of the testator, of dedicating his estate (with but small exceptions) to the children of John Bosley, and to Mrs. Bosley. 3 P. Wms. 112; 3 Atk. 61; 3 My. & Cr. 661; 1 Eq. Ca. Abr. 301, pl. 14; 1 Bro. C. C. 127, 39; 1 Russ. 146; 2 Atk. 113; 1 Jarman, 395, '9, 417; Greenl. Cruise [Devises] 133 and note to ch. 8, §39; 6 Watts, 192; 3 Peters, 117, 118; 11 Gill & J. 206; 2 Paige, 22; 8 Mass. 3; 11 Ed. 528; 22 Maine, 257, 413; 4 B. & Cres. 620; 2 Wms. Ex'rs, 789, 790; 6 Peters, 83, 84; 5 Ves. 247; 10 Wheat. 239; 13 Peters, 173; 5 Ves. Jr. 247; 21 E. C. L. 352; 1 Jarman, 594, 595, 596.

2. The paragraph adverted to, is no residuary disposition; because, a specific bequest follows it to Mrs. Bosley, which would be utterly needless and idle, if it were preceded by the supposed all-comprehending residuary appropriation. 13 Ves. Jr. 39; 1 Russ. 149; 3 Atk. 61; 1 Jarman, 595, 598, 599, 600.

3. There is, by those words, no revocation of the residuary devise and bequest of the will, because, the codicil, in erms following those words, confirms the will, except where the same is (by the codicil) "revoked and altered." The testator introduces several express revocations into his codicil; and to only those revocations must he be understood to refer — and to modifications, by name of "alterations," of his will — for any interferences with the will, as meant to be revoked, or affecte" by the codicil. If the words in question touch at all the residuary disposition of the will, they must affect it only as a revocation; and, leaving out of view mere modifications, or "alterations," the inquiry is, what revocation the testator meant should trench upon the broad confirmation his codicil gives to the will, thus declared as of continuing force? The will speaks anew from the date of the codicil, even without any confirmatory reference to it in the codicil, and the two acts are thus intimately allied; and any revocation of any part of the will, imputed to the codicil, must be by words as precise and unequivocal, and positive, as are the terms of the dispositions supposed to be revoked.

The testator has given his own limitation to the effect of his "alterings" of his will, or of any estate disposed of by it, by declaring, in the codicil, that where Mrs. Bosley, (under the

clause next to the last,) shall "alter" any estate, it shall never-theless take the course prescribed in the will, and that "altera-tion" is not, in his view, and by the law of his will, the same as revocation; and he thus precludes the idea that he had in view any revocations but those he had expressly declared in the codicil. 3 Mason, 486; 10 B. & Cres. 895, (21 E. C. L. 192); 3 Pick. 216; 5 Johns. C. R. 534; 1 Wms. Ex'rs, 114, 116; 21 Eng. C. L. R. 352; 4 Kent, 531; 8 Cowen, 58; 1 Jarman, 189, 395; 2 How. Rep. 580.

4. The will and codicil being thus blended and coopera-tive, the codicil avails as a republication of the will, except where such an inference at law is, by the express terms or neces-sary construction of the codicil, excluded. The will, in this relation to the codicil, is to be treated as if inserted in the codicil. If so, if even there be those contradictory residuary dispositions, the residuary estate must, as modern adjudications now deal with such contrariant clauses, be shared by the parties named or embraced in both clauses. This construction would virtually restore the residuary clause of the will, as the only rule; because, as under the construction just asserted, Mrs. Bosley and the children, the subjects of the two clauses, share equally, by the will, in the residuary estate. 14 Pick. Rep. 521; 6 Johns. C. R. 375; 3 My. & Cr. 376; 1 Jarman, 202, 397, 412; 2 Atk. 374; 2 My. & Keen, 165; Yelv. 209; Cro. Eliz. 9; Greenl. Cruise, (Dev.) 149, (marg.); 10 B. & Cres. 895, (21 E. C. L. 192.)

5. The agreement of the testator to lease a part of his land in Baltimore county, had not the effect to revoke the devise of that part of the land in favor of the complainants, and only modified the devise so as to give the rent and reversion on the lease, in place of the land. This construction applies also to the lot and house by the will devised to "Old Sarah," and, subsequently to the codicil, agreed to be leased to William Hollins, as stated in the defendant's schedule. The privilege, accorded by the agreement of lease, to extinguish the rent and so acquire the reversion, does not render the transaction a sale, and give to the contracting lessee the equitable fee of the land. If the agreements for leasing revoked the devises of these pieces of property, then the testator died intestate as to them; the agreements dating after the codicil. Greenl. Cruise, 105, 109, (note to 106); 2 Ves. Jr. 428; 1 Jarman, 167, 171, 172; 4 Kent, 530; 7 T. R. 399; S. C. 1 B. & Pull. 576; Cro. Car. 23; Cro. Jac. 49; 1 Vern. 97; 3 Bro. Parl. Ca. 12; 2 Chipman, 74; 4 Greenl. 341; 3 Ves. Jr. 685; 1 Maryland Ch. Decis. 36; Cro Eliz. 9.

The counsel for the appellee made the following points.

1. That the residuary clause in the codicil revokes the residuary clause in the will. 4 Black. 381; 4 Kent, 535, (note); 3 Greenl. Cruise, 139; Rowley v. Eyton, 2 Mer. 128; Rogers v. Pettis, 1 Addams, (Prerog.) 30.

2. That the decree of the court below was right; because, if no part of the specific property devised by the last clause in the will, which contains also the residuary devise, was not revoked by the last clause in the codicil, a large part of that specific property was subsequently disposed of, by the testator, and other parts of it otherwise specifically devised by the codicil.

3. Because that portion of such property so specifically devised by said last clause in the will, his lands in Baltimore county, was revoked by the testator's agreement of lease, afterwards executed by Mrs. Bosley, by her lease to Armstrong, on the 18th of January, 1845, for the term of ninety-nine years, renewable forever. 7 Bac. Ab. tit. Wills and Testaments, G. 344; 4 Kent, Com. 528 to 530, and cases there cited, 6 ed.; Colegrave v. Manley, 6 Madd. 84; Ward v. Moore, 4 Madd. 368; 5 Pick. 112; 7 Johns. Ch. Rep. 261.

Mr. Chief Justice TANEY delivered the opinion of the court.

The dispute in this case arises out of the will and codicil of James Bosley, late of the city of Baltimore. The will was executed in 1828, and the codicil in 1839. He died in December, 1843.

In his will, after sundry specific devises and bequests, he devised and bequeathed all his lands and other real estate, in Baltimore, Cecil, and Alleghany counties, in Maryland, and also in Florida, and his house and lot in Santa Croix, and all the real estate he might have elsewhere, to his wife Elizabeth N. Bosley, her heirs and assigns, in trust to sell the same to the best advantage, and directed the net proceeds, together with all the residue of his estate, real, personal, and mixed, not therein before devised, to be equally divided — one half to his wife, and the other to the children of his brother, Dr. John Bosley. After making his will, and previous to the codicil, he sold all of the lands particularly mentioned in the residuary clause of the will above stated, except some lands lying in Baltimore county, and except also his Florida land and part of that in Alleghany county, of which it seems he had been unable to obtain possession. And at the time of making the codicil, he held some of the proceeds of these sales in bonds and other securities, and with the residue had purchased other property.

By the codicil he devised his summer residence, situated in

Baltimore county, to his wife, and also the securities he held for the lands sold in Cecil county, — and directed all the property he had acquired after the date of his will to be sold and the proceeds to be equally divided between his wife and her sister, Margaret E. Noel. Then follows a residuary clause in the following words:

" Lastly, my pew in St. Paul's Church, and all my other property, real or personal, and all money in bank belonging to me at the time of my decease, I give, devise and bequeathe unto my said wife Elizabeth N. Bosley, and her heirs forever; and I ratify and confirm my said last will in every thing except where the same is hereby revoked and altered as aforesaid."

Upon this will and codicil, the appellants, who are the children of Dr. John Bosley, claim the one half of this personal property left by the testator at his death, and also one half of the lands not specifically devised, upon the ground that the residuary clause in the will is not revoked by that in the codicil.

This claim is altogether untenable. The residuary clause in the codicil is inconsistent with that in the will, and consequently revokes it.

There is another claim, however, which presents a question of more difficulty.

It appears that at the time of making his will the testator held, in fee-simple, fifty acres of land in Baltimore county; and that in 1842, after the execution of the codicil, he entered into a contract with a certain Horatio G. Armstrong, whereby he covenanted that in consideration of the payment of two thousand dollars, at the times specified in the agreement, and the annual ground rent of two hundred and ten dollars, payable semiannually, he would lease the said land to Armstrong, his executors, administrators, and assigns, for ninety-nine years, renewable forever, with the right to the said Armstrong to extinguish the ground rent, upon the payment of three thousand five hundred dollars at any time, to the said James Bosley, his heirs and assigns. The testator died before the cash payments were made; and the money was afterwards received by his widow, and the lease executed by her according to the terms of the covenant.

As this was a part of the land in Baltimore county, and was therefore specifically devised in the residuary clause of the will, it was not revoked by the general devise of the residue of his real and personal property in the codicil. The question therefore is, whether the contract with Armstrong was an implied revocation of the devise in the will.

The adjudged cases upon implied revocations are collected together in 4 Kent's Com. 528, and the rule he deduces from

them is this, " that the same interest which the testator had when he made his will should continue to be the same interest; and remain unaltered to his death, and that the least alteration in that interest is a revocation." A valid agreement or covenant to convey, which equity will specifically enforce, will operate in equity as a revocation of a previous devise of the land. Walton v. Walton, 7 Johns. Ch. Rep. 258.

In the case before us, the interest which the testator had in this land at the time of making his will, was converted into money by his contract with Armstrong. It was a sale and an agreement to convey his whole interest in the land. It is therefore unlike the case of a lease for years, or of ninety-nine years renewable forever, in which the lessor retains the reversion — and does not bind himself to convey it on any terms to the lessee.

The form of the contract adopted in this instance, between the testator and Armstrong, is in familiar use in the sale of lots in the city of Baltimore and the adjacent country. It has nearly if not altogether superseded the old forms of contract where the vendor conveyed the lands and took a mortgage to secure the payment of the purchase-money — or gave his bond for the conveyance and retained the legal title in himself until the purchase-money was paid. And it has taken the place of these forms of contract, because it is far more convenient, both to the seller and the purchaser. For it enables the vendee to postpone the payment of a large portion of the purchase-money until he finds it entirely convenient to pay it; and at the same time it is more advantageous to the vendor, as it gives him a better security for the punctual payment of the interest; and while an extended credit is given to the vendee, it is to the vendor a sale for cash. For if his ground rent is well secured, he can at any time sell it in the market, for the balance of the purchase-money left in the hands of the vendee. It will be observed that the rent reserved is precisely the interest on the amount of the purchase-money remaining unpaid. And when it must be admitted that a sale in which a bond of conveyance is given, and the title retained by the vendor, to secure the payment of the purchase-money, is in equity a revocation, there would seem to be no good reason for holding otherwise in the case before us, where the vendor is equally bound to convey when the whole purchase-money is paid. A distinction between the cases would rest on a difference in form rather than of substance and principle. It would moreover make the revocation depend upon the will of a stranger, and not upon that of the testator. For if Armstrong had paid to him in his lifetime, the whole amount of the purchase-money, as he had a right to do under the con-

tract, it is very clear that the devise would then have been revoked. And if the purchaser's omission to pay prevents the contract from being a revocation, the validity of the devise is made to depend, not upon the will or the act of a testator, but that of a stranger, over which the testator has no control. We think a distinction leading to that result cannot be maintained, and that the devise in question was revoked by the contract with Armstrong.

The counsel for the appellants, however, contends, that if the will is revoked, and the land converted into money, yet there was a legal reversionary interest remaining in him; and that the rent reserved, being incident to the reversion and pertaining to the realty, cannot pass under a bequest of money or personal estate.

But it must be remembered that the residuary clause in the codicil gives to his wife all his real as well as personal property, not otherwise disposed of; and therefore is broad enough to embrace the interest in question, although, in contemplation of law, it belongs to the realty.

We do not mean to say, that every residuary clause in a codicil will pass land specifically devised in a will, where, by some act of the testator, the devise is impliedly revoked after the codicil was executed. There are adjudged cases upon certain wills where it has been held otherwise. But whether the property passes to the devisee or descends to the heir, as in a case of intestacy, must depend upon the intention of the testator, to be gathered from the will and codicil. It is always necessarily a question of intention. No two wills, probably, were ever written in precisely the same language throughout; nor any two testators die under the same circumstances in relation to their estate, family, and friends. And it would be very unsafe as well as unjust to expound the will of one man, by the construction which a court of justice had given to that of another, merely because similar words were used in paticular parts of it.

Undoubtedly there are fixed rules of law in relation to the construction of certain words and phrases in a will, which have been established by a long course of judicial decisions; and which have become landmarks of property, and cannot therefore be disturbed. But in most of the cases in which they have been applied, it is to be feared that they have not accomplished, but defeated, the testator's intentions.

They owe their origin to the principles of the feudal system, which always favored the heir at law, because it was its policy to perpetuate large estates in the same family. And, acting upon this principle, the English courts of justice have, in some instances, placed the narrowest possible construction on the

words of a will. And a testator sometimes being held to die intestate as to portions of his property, and left it to descend to his heir, when a fair and reasonable interpretation, according to the ordinary acceptation of the words used, plainly showed that the whole estate was intended to be devised to another.

It has not been the disposition of courts of justice, in modern times, to extend the application of these rigid technical rules; but rather to carry out the intention of the testator, when no fixed rule of legal interpretation stands in the way. And this is, and ought to be, more especially the case in this country. For wills here are most frequently drawn by persons unacquainted with legal phraseology, and ignorant of the meaning which the law attaches to the words they use. The property devised is, perhaps, in the greater number of cases, the fruits of the testator's own industry. And the policy and institutions of the country are adverse to the feudal policy of favoring the heir at the expense of the devisee; and of construing, for that purpose, the words of the will in their most restricted sense, although that construction obviously defeats the intention of the testator.

But the question, arising upon this will and codicil, does not depend upon any word or phrase to which the law has affixed a certain and definite meaning. The words used are legally sufficient to pass the property to his widow, and the only question is, was that his intention, as we gather it from the will and codicil, considered together? We think it was.

Eleven years elapsed between the date of the will and that of the codicil. The situation of the testator's property had undergone considerable changes during that time; and his mind also had materially changed as to the manner of disposing of it. The lands mentioned in the residuary clause of his will, had, with a very small exception, been sold. And the property he purchased with the proceeds of these sales or otherwise acquired after the date of the will, was devised by the codicil to his wife and her sister, and not, as before, divided between his wife and his brother's children; and the whole of his personal estate is given exclusively to his wife, instead of the one half only bequeathed in the will. The land, which has given rise to this controversy, was also sold by the testator in his lifetime, and two thousand dollars of the purchase-money had become personalty, and as such, unquestionably passed to the wife, by the residuary clause in the codicil. The testator's remaining interest in this property, was also money, and not land; but by reason of the form in which he contracted to sell it, this portion of the money belonged to the realty. It is impossible to suppose, after looking at these bequests to his wife, that he meant to die intestate of this money, and to divide this small portion

of his estate in two parts, giving her the two thousand dollars, but withholding from her the residue, and leaving it to be claimed by whoever might chance to be his heir at law at the time of his death. On the contrary, it is manifest, from the whole context of the will and codicil, that he did not mean to die intestate of any portion of his property; and that what did not pass to others by a specific devise or bequest, should go to his wife. The codicil is evidently drawn by unskilful hands, and therefore, according to settled principles of law, must receive a fair and liberal interpretation to accomplish the intent. And as that intent is apparent in favor of the widow, it ought not to be defeated by a narrow and technical construction of particular words.

It was suggested, in the argument, that the appellants might be entitled to a remainder in fee, in the two lots on which, it would seem from the will and the codicil, that two old servants of the testator were living. But this point, very properly, was not pressed. For the lots mentioned in that clause of the will, in which a remainder in fee is given to the appellants after the death of Mrs. Bosley, are lots on which there were improvements, and which yielded an income. The lots in question were not of that description. They yielded no income, and consequently are not embraced in that devise.

Upon the whole, therefore, we think the decree of the Circuit Court was right, and must be affirmed.

### Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Maryland, and was argued by counsel. On consideration whereof, it is now here ordered, adjudged, and decreed, by this court, that the decree of the said Circuit Court in this cause be, and the same is hereby, affirmed with costs.

Dissenting, Mr. Justice GRIER.