## LAZZARONE v. OISHEI et al.

### (Superior Court of Buffalo, General Term. December 21, 1892.)

1. FALSE IMPRISONMENT—RELEASE OF DAMAGES—DURESS.

Where, after a person has procured another's arrest on a criminal charge which did not justify an arrest, and, after his discharge, has procured his arrest again on an order in a civil action for fraud, where an arrest was not warranted, he procures from such person, while he is imprisoned, and after several months' confinement, and on the promise to procure him bail, which is done, a release of himself and the sureties on his bond given for such order of arrest, the release is given under duress, and will not bar an action on the bond to recover damages for the imprisonment.

2. JUDGMENT BY DEFAULT—ACTION FOR DAMAGES.

Laws 1891. c. 105, § 459, (the Charter of Buffalo,) providing that, in an action in the municipal court, arising on a "contract for the recovery of money only." plaintiff may file a complaint specifying the amount due from defendant, and for which he will demand judgment, and serve a copy on defendant with the summons, and that on defendant's default the court may on proof of such service enter judgment for the amount demanded. without further proof, does not apply in an action on a bond given for an order of arrest to recover damages for the imprisonment; but in such an action plaintiff must establish his cause of action by evidence, and prove his damages.

3 SAME—SERVICE OF SUMMONS AND COMPLAINT.

Such section, in authorizing the summons and complaint to be served by any person of full age, not a party to the action, etc., applies only to the actions specified, "arising on a contract for the recovery of money only," and not to an action on a bond for an order of arrest to recover damages for the imprisonment. but the service in such an action is governed by section 471, which provides that no person shall execute the process of the court, except

the constables and such other persons as shall be duly deputized; and, unless service is made by a constable or deputy, the court acquires no jurisdiction.

4. JURISDICTION—WAIVER OF OBJECTION.

An objection to the court's jurisdiction because of want of proper service, when overruled, is not waived by defendant's appearance and participation in the trial.

Titus, C. J., dissenting.

Appeal from municipal court.

Action by Guiseppe Lazzarone against Achille J. Oishei and others, on a bond given for an order of arrest against plaintiff, to recover damages for the imprisonment. From a judgment for defendants, plaintiff appeals. Affirmed.

Argued before TITUS, C. J., and HATCH and WHITE, JJ.

Edmund P. Cottle, for appellant.

E. T. Durand, for respondents.

HATCH, J. While the testimony in the court below was conflicting, yet the facts upon which this appeal is to be determined are practically undisputed. It appears that the plaintiff was injured by the Allegany & Kinzua Railroad Company, and thereafter entered into a contract with the defendant Oishei to prosecute said company for damages sustained. Oishei, in consideration of the contract, was to receive two thirds of the recovery. He was to advance money to pay doctors' bills and other charges, and employ an attorney to prosecute the claim. An action was begun against the railroad company under this arrangement, and was pending when the plaintiff, intending to deprive said Oishei of the benefits of his contract, secretly settled said action with the company, and refused to pay Oishei anything. Thereupon Oishei made complaint to the police magistrate of the city, upon which a criminal warrant was issued. Plaintiff was arrested thereunder, and lodged in jail. What the charge made against him was, does not appear; but Oishei states that plaintiff was "confined in jail four or five days upon the warrant issued by Justice King, until the civil proceeding could be instituted." No criminal charge was ever pressed; and plaintiff, having obtained counsel, was taken before the magistrate and discharged, and was immediately rearrested by virtue of an order of arrest issuing out of the county court of Erie county, in an action brought by Oishei to recover damages for the claimed fraudulent settlement. A motion was thereafter made to discharge the order of arrest, which was denied; and from such decision an appeal was taken to the general term of the supreme court, where said order was reversed, and plaintiff was discharged. 15 N. Y. Supp. 933. While the plaintiff was confined in jail, and after an appeal had been taken from the decision of the county court, but before it was heard in the appellate tribunal, Oishei, at the instance of plaintiff's wife, visited plaintiff at the jail, and stated to him, among other things: "If you pay me what you owe me, I will let you out right away. I don't want anything more than what you owe me." At another interview, Oishei said he would let him out "on the conditions that he would release my bondsmen and

release me from all claims, and would pay me the amount that he had obtained from me in the month of December,—what disbursements I had been put to. He said he would do that.  *  *  *  I told him I would furnish him the necessary bondsmen to bail him out." After this conversation, plaintiff, while in custody, executed and delivered to Oishei a note for $70, and also executed, acknowledged, and delivered a general release of all causes of action against Oishei and his codefendants. Thereupon a bail bond was executed, and plaintiff released. Although the release is not dated, it appears elsewhere that it was in fact executed on the 23d of May, 1891, while plaintiff had been imprisoned since about the 21st day of March previous. When plaintiff made his settlement with the railroad company, said company executed an agreement, in consideration of the settlement, whereby it agreed to protect plaintiff against any action on the part of the attorney on account thereof. After plaintiff was released on bail, he authorized Oishei, in writing, to bring an action for damages on account of his imprisonment, loss, etc., and the action was subsequently brought, and was pending at the time the appeal was heard at general term. During all the time in which these proceedings were taken, after the arrest of plaintiff under the warrant issued by the police magistrate, the attorney now representing plaintiff acted for him. He procured his discharge under the warrant. To his hands came the order of arrest. He made the motion to discharge him therefrom, and upon its denial took the appeal, and subsequently argued it at general term. When he had succeeded there, and established a liability upon the bond given upon the order of arrest, he brought this action, and then, for the first time, was confronted with the release. He learned then, for the first time, what steps had been taken, of which before he was substantially ignorant. The plaintiff is an Italian,—neither reads nor speaks the English language. Oishei speaks both Italian and English fluently. He was not, at the time of the first arrest, an attorney; but when the release was obtained he was admitted as an attorney, and practiced at the bar. There are many other circumstances, not noted here or referred to, all of which are pertinent, but it does not seem necessary to refer to more.

The court below held the release a bar to right of recovery, and rendered judgment for costs against plaintiff; hence the appeal. I should be disposed to hold, in the absence of any authority, that the note and release taken from plaintiff, under the circumstances of this case, are void, creating no liability against him, and not affecting defendants' liability upon their bond. Abundant authority, however, establishes such conclusion. There was in this case duress of imprisonment. Plaintiff was imprisoned, first, upon a fictitious charge, subsequently was arrested under a claim which did not authorize his arrest, and in order to relieve himself, after long imprisonment, executed the papers. No right of arrest or imprisonment existed in either case, and no paper executed to procure his liberty bound him. Foshay v. Ferguson, 5 Hill, 154. In Evans v. Begleys, 2 Wend. 243, the court held that a judgment, entered upon a bond and warrant of attorney executed by defendants while in close custody, would be set aside, while in Guilleaume v. Rowe, 94 N.

Y. 272, it was said by Judge Danforth: "The instrument on which he relies was executed by the plaintiff without consideration, and while enduring an imprisonment which was illegal. It was therefore void for duress, * * * and the defendants could acquire no right under it," —citing with approval the cases before cited. In Scholey v. Mumford, 60 N. Y. 501, it was said by Judge Rapallo, in speaking of a person: "When he acts under any species of compulsion, the payment is not voluntary." There the rule was applied in the case of duress of property. The same rule had been before asserted in Harmony v. Bingham, 12 N. Y. 116. In Adams v. Bank, 116 N. Y. 613, 23 N. E. Rep. 7, many authorities are collected, and the rule finally stated to be is "that whenever a party is so situated as to exercise a controlling influence over the will, conduct, and interest of another, contracts thus made will be set aside." Boutel v. Owens, 2 Sandf. 654.

In the present case it was well known to Oishei that plaintiff had procured counsel at the time he was arrested. A motion had been made, and he had made many affidavits therein. He knew that efforts were being made to set aside the order, and must be presumed to have known that if the order was set aside his liability attached for damages growing out of the illegal arrest and imprisonment. At this juncture he procures the release from any liability upon the bond, obtains a note for $70, procures bail for plaintiff, and thus, having security, and release from contingent liability, conceals the same from plaintiff's attorney, and argues the appeal from the order. If he had succeeded, and the order were affirmed, he could immediately clap plaintiff in jail, by causing his bail, which he controlled, to surrender him; and thus plaintiff would have gained nothing, while Oishei ran no risk. Such practices, especially by an attorney, should not be tolerated, certainly not upheld, in a court of justice. Not alone was this the condition, but at the time when the appeal was argued Oishei was in fact plaintiff's attorney in an action to recover damages for plaintiff's illegal imprisonment, of which he had been the cause. It is quite difficult to see how he could, in good faith, act for the plaintiff to redress a wrong which he had caused, and at the same time continue a right to inflict further injury of the same kind. Perhaps he thought he was aiding the client by perpetually imprisoning him, in order that his damages might be enhanced against the railroad company, as upon no other theory can I see that his services were of use to his client. Plaintiff does not now, nor at any other time has he expressed a consuming desire to look to the railroad company for damages, and undergo further imprisonment. It may be that plaintiff has been guilty of a fraud and a wrong, by which Oishei has suffered, but such condition does not authorize such practice as obtained here. The reversal of the order fixed defendants' liability for such expense as plaintiff had incurred, and such damage as he had suffered, within the limitations of the penalty of the bond. Ferris v. Tannebaum, (Com. Pl. N. Y.) 15 N. Y. Supp. 295.

Upon the merits of this case, therefore, plaintiff became entitled to recover. But while the plaintiff, upon the facts as shown, is entitled to recover, I reluctantly reach the conclusion that the judgment appealed

·from· must be affirmed, for the reason that the court did not acquire jurisdiction of the persons of defendants. The act creating the municipal court of Buffalo,[1] with respect to the service of a summons with a ·verified complaint, provided, by section 7:

"In an action brought in this court, arising on a contract for the recovery of ·money only, or upon account, the plaintiff, at the time of issuing the summons, ·may file with the clerk of said court a written complaint, setting forth, in a plain and concise manner, the facts or items of account constituting the cause of action, specifying the amount actually due from the defendant to the plaintiff, and ·for which the plaintiff will demand judgment."

It then provides that such summons and complaint may be served by any person of full age, not a party to the action, by delivering to and leaving with the defendant, personally, a copy thereof. By section 9 it is provided that, if default be made in answering the complaint, defendant shall be deemed to have admitted the allegations of the complaint, and the court, upon the filing of the complaint, with due proof ·of service thereof, shall immediately enter judgment for the amount demanded in the complaint, with costs, etc., without further proof. These are the only cases in which judgment is authorized to be entered without further proving the cause of action. The act was amended in 1891, and now constitutes a· part of the charter of the city of Buffalo, but the provisions of law in the aforementioned regard were re-enacted ·intact. Laws 1891, c. 105, § 459. These sections resemble closely ·the Code of Procedure, except that the latter required the statement of the demand in the summons. Its language was: "In an ·action arising on contract, for the recovery of money only, that he will take judgment for a sum specified therein." Subdivision 1, § 129. And by section 246, it was provided, among other things, for the entry of judgment upon default, if the summons and verified complaint were served, judgment was to be entered in conformity with the demand contained in the summons; if complaint not sworn to or served, then the clerk was required to take proof, etc. It is to be noticed that the sections of ·the Code, and the municipal court act, are practically identical in language. Both say, in actions "arising on contract for the recovery of money only." These sections have been the subject of judicial construction many times. In Mason v. Hand, 1 Lans. 66, it was held ·that when the causes of action arise on a contract for the payment of a sum of money only, if such sum, sued for, was certain in amount, or ·capable of being certainly reached by computation, then the summons ·was to be issued under subdivision 1 of section 129, but that in actions ·to recover damages for a breach of contract, when such damages depended upon proof extrinsic the contract, then the summons was to be issued under subdivision 2, and application· for judgment must be made ·to the court. The court cited with approval Tuttle v. Smith, 14 How. Pr. 395, and other cases holding the same doctrine. Bates v. Reynolds, ·7 Bosw. 691, approves this rule. In Levy v. Nicholas, 15 Abb. Pr. 63, (reported in note,) it was held, in an action upon an undertaking similar in ·character to this, application must be made to the court for judgment. The

------

[1] Laws 1880, c. 344.

Code of Civil Procedure § 420, supersedes the section referred to, but its only effect is to enact in a statute what the courts had before decided. It follows from this construction that the present is not a case where the plaintiff could file and serve a verified complaint, and enter judgment thereon, without making proof of his cause of action, aliunde the allegations of his complaint, and establishing the damages he has sustained, and, as there is no other provision of law for the service of a verified complaint entered in the municipal court, it follows that plaintiff acquired no legal rights flowing therefrom. When the parties appeared before the judge, defendants objected to the jurisdiction of the court upon the ground that there was no sufficient service of the summons. This objection raised the question of jurisdiction of the person of the defendants. Reference to the proof of service of the summons shows it to have been served by a person not a constable, but it was made by a person such as is provided for, where it is proper for the service of a verified complaint. As we have seen, this was not authorized, in consequence of which, authority for such service must be sought elsewhere. By Laws 1891, § 471. c. 105, it is provided: "No person shall execute the process of the court except the constables duly appointed, and such other persons as may be deputized in the manner now provided by law." The person making the service was not a constable, and no claim is made that he was deputized in any manner. Consequently, he was not such person as could execute the process, and the court did not obtain jurisdiction of the person. It is urged that he waived this objection. But it appears that he objected; that the court overruled his objection. He was then either compelled to appear or suffer judgment by default to pass against him. I do not understand that an appearance and litigation under such circumstances have ever been held to constitute a waiver of the question of jurisdiction of the court. On the contrary, every adjudicated case that has fallen under my observation refutes such doctrine. Avery v. Slack, 17 Wend. 85; Dewey v. Greene, 4 Denio, 93; Horton v. Fancher, 14 Hun, 172; Nickerson v. Ruger, 76 N. Y. 283. It follows that, as the court never acquired jurisdiction, it could render no judgment against defendants. The order entered herein will show that the determination upon the merits is reversed, and that judgment of affirmance pass as upon the sole ground that there was no proper service of the summons upon defendants. The judgment is in this respect affirmed, without costs as to either party in this court.

WHITE, J., concurs.

TITUS, C. J., dissents, and favors affirmance of judgment on the sole ground that the court obtained no jurisdiction of the defendants, and not upon the merits.