Marshall, C. J.
 

 This cause originated in the court of common pleas of Hamilton county as a submission of an agreed case, under the statute, to obtain the determination of the court as to the ownership of certain real estate of which one Margaret Gibson Anderson died seized. On October
 
 *685
 
 7, 1923, Mrs. Anderson, being then a resident of California, made a will in the following language: “I, Margaret Gibson Anderson, bequeath all my wordly goods to my dear husband, Edward Anderson.” This will, remarkable for its brevity, was written by the testatrix without the aid of legal counsel. She died December 21, 1923, leaving no issue surviving her, but leaving her husband, Edward Anderson, and a brother, Thomas Littleton Gibson. The agreed facts show that she left a valuable piece of real estate in Hamilton county, Ohio, which is admitted to be ancestral property, which, under the statutes of Ohio, would go to Edward Anderson for life and to Thomas Littleton Gibson in remainder, unless the will makes other disposition of the same. The will was probated in California and an exemplified copy was thereafter admitted to record by the probate court of Hamilton county, Ohio, on July 10, 1924. The sole question for determination, therefore, is whether the language employed by the testatrix is sufficient to operate as a devise of the real estate to her husband. In the event it does not so operate, it will descend under the Ohio statutes to the brother, subject to the life estate of the husband. The court of common pleas solved the problem in favor of the husband, and on error to the Court of Appeals the judgment of the court of common pleas was reversed and final judgment rendered in favor of the brother.
 

 This cause involves the interpretation of a will, and the problem presented to the court is that of determining the intention of the testatrix. More concretely stated, it must be ascertained whether
 
 *686
 
 by the expression “all my wordly goods” the testatrix referred only to personal property, or whether she intended to give to her husband her real estate. There is apparently some controversy as to what property, if any, the testatrix left, other than the real estate in Ohio. It can make little difference whether she left any other property, and, if so, whether that property consisted of personalty, or whether it consisted of real estate acquired by purchase, or both. If she left no property other than the Ohio real estate, and if she did not intend the Ohio real estate to be disposed of by the language she employed in her will, then her will was a futile and vain thing. If, on the other hand, she left personal property, or real estate acquired by purchase, or both, but did not intend that her ancestral property should go to her husband under the language of the will, then her will was equally futile. If she owned personal property, or real estate acquired by purchase, and had conveyed all or any part thereof to any person other than her husband, thereby changing the course of succession or descent of the same, it might be of some consequence to know definitely concerning the kind and character of the property, if any, other than the ancestral real estate; but, inasmuch as her husband was the sole object of her bounty under the will, it does not seem important to know whether or not she owned any property other than the ancestral real estate in Ohio. In any view of the case, her will was a vain thing unless she intended to give the Ohio real estate to her husband in fee.
 

 It is argued that the word “bequeath” is a technical term referring to the gift of personal prop
 
 *687
 
 erty by will, and that this is an indication that she did not intend to give to her husband any real estate. There is authority for such meaning to be given to the word “bequeath,” but there is other equally respectable authority which holds that that term is synonymous with “devise.” It is quite certain that no case has ever been decided where real estate given by will has not been permitted to have effect on the sole ground that the word “bequeath” was employed instead of the word “devise. ’ ’ While under some authorities the word “bequeath” is accepted as an indication that only personal property was referred to, under the other authorities it would afford no ground for such an inference. The principal difficulty is found in the expression “all my wordly goods.”
 

 This being a question of the interpretation of a will, this court must observe the cardinal rule of the construction and interpretation of wills, viz., to ascertain the intention of the testator; and, in so doing, that intention must be ascertained, if possible, from the language employed in the will itself. And if that language is such that its meaning is clear, and if the words employed are unequivocal and unambiguous, they should be given their ordinary meaning and natural effect, even though it should appear
 
 aliunde
 
 that the testator intended a different disposition. In other words, the court should not make a will different from that made by the testatrix, where the language employed by her is clear and unequivocal, even though it should clearly appear that she entertained an intent wholly at variance with the results such clear and unequivocal language would produce. If the
 
 *688
 
 word “goods” without any adjectives had been used, or if the expression “goods and chattels” had been employed, there would be little difficulty in determining that she only meant to dispose of personal property. If, on the other hand, she had used the word “estate,” or the word “property,” there would be little difficulty in determining that she intended to dispose of real estate as well as personal property.
 

 The court of common pleas decided in favor of the husband, on the theory that it was a holographic will, and therefore less subject to definition of the words employed by technical legal rules, and that the words employed should be given the meaning which would be imputed to them in common parlance. The Court of Appeals, on the other hand,applied technical rules of interpretation to the expression “bequeath all my wordly goods,” and held that that language would only pass title to ancestral real estate, if under the guise of construction the court should substitute a new and different will from the one executed by the testatrix. In this court we have not been unmindful of the rule of interpretation of wills, that the court should not substitute a different will from that which a testator has clearly expressed. Neither is it our purpose to give to any of the words of the will a purely technical meaning, or to give to the entire will an effect which will do violence to any of the settled rules of interpretation.
 

 Many cases have been cited, all of which have been carefully examined, but none of the authorities cited are decisive of-the instant case, because the language in the wills under consideration -in those
 
 *689
 
 authorities necessarily differs from the language employed in the will in the instant case. Adjudicated cases are therefore never valuable in determining the intent of the testator, which, in all cases, is the cardinal rule of interpretation. The principal case relied upon by counsel for the brother is
 
 Bradford
 
 v.
 
 Bradford,
 
 6 Whart., (Pa.), 236, which contains the following language: “As to my wordly goods of all sorts and, kinds, I will and order,” etc. And in the same clause there was a reference to a division of “all the rents and profits.” The court held that this was not sufficient to pass real estate. "While this case has never been overruled, the rigor of the rule was somewhat modified in a later case decided by that court. The decision of the Court of Appeals is largely based upon that case. It must be admitted that the language of the will in that case was much more comprehensive than the language of the will in the instant case, and, if that case should be accepted as a persuasive authority, we should have but little difficulty. On the other hand, in the case of
 
 Torrey
 
 v.
 
 Torrey,
 
 70 N. J. Law, 672, 59 A., 450, the expression, “This world’s goods of which I may be possessed at the time of my death,” was held to pass the title to real estate to the wife of the testator, because there was a further statement that the testator was “confident that she will care for our dear children with' the same love and devotion which she has ever shown.” Other cases are cited and discussed where the expression “wordly goods” was employed, but we are of the opinion that those cases are only valuable in showing that those words should not be given their techni
 
 *690
 
 cal legal signification, but that, on the contrary, they are ambiguous, and therefore to be interpreted in the light of the testator’s circumstances, the nature and character of the testator’s property, and the relation of the testator to the objects of his bounty. Chief Justice Taney in
 
 Bosley
 
 v.
 
 Bosley’s Ex’rs.,
 
 55 U. S., (14 How.), 390, 14 L. Ed., 468, declared the danger as well as the injustice in expounding the will of one man by comparing the language employed with that of another where similar words were employed, but where the circumstances were wholly different. Mr. Justice Miller discussed the same proposition in
 
 Clarke
 
 v.
 
 Boorman’s Ex’rs.,
 
 85 U. S., (18 Wall.), 493, 21 L. Ed., 904, where the language of Chief Justice Taney is quoted. He further stated, at page 502:
 

 “To these considerations it is to be added that of all legal instruments wills are the most in-artificial, the least to be governed in their construction by the settled use of technical legal terms, the will itself being often the production of persons not only ignorant of law but of the correct use of the language in which it is written.”
 

 In
 
 Moon, Admr.,
 
 v.
 
 Stewart,
 
 87 Ohio St., 349, 101 N. E., 344, 45 L. R. A. (N. S.), 48, Ann. Cas., 1914A, 104, there is a discussion in the opinion of the effect to be given to technical language employed in a will written by a layman, not by a lawyer, where it is further stated that the courts should not view the language technically, but literally, and with reference to its popular meaning.
 

 If this ancestral real estate were all the property testatrix owned, in that event the effect of holding that the language employed by her would
 
 *691
 
 not pass title to the real estate would be to render her wholly intestate. If on the other hand, she owned other real estate, acquired by purchase, or if she owned personal property, then the same holding would render her partially intestate. In either event, it is a well-settled rule of construction that a testator is never presumed to intend to die intestate as to any part of his estate, and a court of equity will put such a construction upon equivocal words as will prevent such a result. This was declared in the early case of
 
 Collier
 
 v.
 
 Collier’s Ex’rs., 3
 
 Ohio St., 369, and this rule of interpretation has been universally followed, not only by this court, but it is the rule which prevails in practically every other court. Having postponed the making of her will until only a short time before her death, it will not be presumed that she intended to do only a vain thing, and, having referred to her husband in terms of endearment, it will be presumed that she intended to do that which natural sentiments would dictate. Again, having written her own will, it will be presumed that the language employed by her was meant to be taken in the same sense in which that language is .understood by people generally, and not according to the technical meaning which would be given to it by the legal profession. “Wordly” is defined in the Century Dictionary as follows:
 

 “Of or pertaining to the world or the present state of existence; temporal; earthly; devoted to, interested in, or connected with this present life, and its cares, advantages, or pleasures, to the exclusion of those of a future life.”
 

 It is a term of such universal application to tern
 
 *692
 
 poral matters that to the lay mind it might well include any and all kinds of property. The express sion “all my worldly goods” is one which has been in common use for nearly 400 years. For nearly 400 years it has been employed in the marriage ceremony of the English Church, and has been adopted by the Protestant Episcopal Church in the United States, and possibly by other denominations. In the ceremony for the solemnization of matrimony, as found in the Book of Common Prayer of the Church of England, we find this expression: “With all my worldly goods I thee endow.” That expression has therefore become universal as including all worldly possessions of every kind and character. No person of culture, whether having legal training or not, would fail to understand the expression in the universal sense of including all kinds of property.
 

 We are of the opinion that the testatrix in this case so understood those words, and so intended them to be interpreted, when she wrote her own will. To give any different meaning to them would subvert the intention of the testatrix instead of executing it.
 

 Holding firmly to the doctrine that the cardinal rule of interpretation is that of determining the intention of the testator, and being unable to entertain a reasonable doubt that the testatrix in the instant case intended all of her property real and personal to pass to her husband, and finding nothing in the language employed which requires a technical interpretation of the language used, but, on the contrary, feeling that the expression “all my worldly goods” had reference to the proverbial
 
 *693
 
 meaning which, that expression has among people generally, we have reached the conclusion that the Court of Appeals erred and that its judgment should be reversed and the judgment of the court of common pleas affirmed.
 

 Judgment reversed and judgment of common pleas affirmed.
 

 Day, Allen, Kinkade, Jones and Matthias, JJ., concur.