KELLNER *v.* HAGOOD ET AL.

(Decided December 1, 1930.)

*Mr. John F. Neilan* and *Mr. Walter S. Harlan,* for plaintiff in error.

*Messrs. Andrews, Andrews & Rogers,* for defendants in error.

Ross, J.   In an action to contest a nuncupative will the judgment was in favor of the will, the probate of which was sustained.

The assignments of error presented are that the

alleged nuncupative will does not meet the requirements of the Ohio statutes, and is not testamentary in character; error in admission in evidence of the certificate; the overruling of motions for directed verdicts; the giving and refusing to give special charges; and the admission and exclusion of evidence.

The testamentary statement is as follows: "I want to leave all my property to Ida Hagood and she has my bank book." These words were spoken by the decedent at a time when he knew that he was very seriously ill, and immediately after he had been warned by his physicians that it would be wise for him to make any statement he cared to make.

The person named as the recipient of his personal estate was his fiancee, a woman who had been very kind to him, and who warranted his beneficence. There was nothing extrinsic to the will showing it to be other than a perfectly natural and logical action.

While there is some evidence of the lapsing of consciousness of decedent about the time he expressed his testamentary wishes, there is ample evidence justifying the jury in concluding that the decedent at the time of the testamentary statement was of sound and disposing mind and memory.

It is claimed that the language of the will itself is ineffective as a testamentary disposition, in that the expression used, instead of being a positive direction or disposition, is merely expressive of a wish or desire on the part of the decedent.

Section 10601, General Code, provides: "A verbal will, made in the last sickness, shall be valid

in respect to personal estate, if reduced to writing, and subscribed by two competent disinterested witnesses, within ten days after the speaking of the testamentary words, if it also be proved by such witnesses, that the testator was of sound mind and memory, not under restraint, and that he called upon some person present, at the time the testamentary words were spoken, to bear testimony to such disposition as his will."

We must go to Section 10503, General Code, for a definition of the power to make a will. This section is as follows: "A person of full age, of sound mind and memory, and not under restraint, who has property, or an interest therein, may give and bequeath it by last will and testament lawfully executed."

The question presented is: Did the decedent "give and bequeath" by the words used? In *Anderson* v. *Gibson*, 116 Ohio St., 684, 157 N. E., 377, 54 A. L. R., 92, the syllabus holds that "The cardinal rule of interpretation of a will is to ascertain the meaning and intention of the testator." At page 687, (157 N. E., 377, 378), in the opinion, Judge Marshall says: "This being a question of the interpretation of a will, this court must observe the cardinal rule of the construction and interpretation of wills, viz., to ascertain the intention of the testator; and, in so doing, that intention must be ascertained, if possible, from the language employed in the will itself."

Were we to construe the words "I want to leave all my property to Ida Hagood" otherwise than as a gift and bequest to Ida Hagood, we are convinced we would be doing violence to the manifest testa-

mentary action of the decedent. The deliberate advice of a trained and experienced scrivener was absent. There was no one to suggest more positive disposing language. The intention of the decedent was clearly understood by those present. Only technical requirements would suggest a limitation upon the intention of the decedent to "give and bequeath."

It is further urged that the decedent failed to comply with the provisions of Section 10601, General Code, in that it does not appear "that he called upon some person present, at the time the testamentary words were spoken, to bear testimony to such disposition as his will."

It must be understood that the Legislature, when making provision for nuncupative wills, took into consideration that they of necessity would not, for various reasons, be executed under the deliberate circumstances attending the execution of ordinary formal written wills.

Although strict compliance with all testamentary requirements of the statute is necessary, no specific formula or ritual has been set out in the Code, which must be followed.

As to the witnesses, the statute requires (1) that the testator call upon some person; (2) present at the time the testamentary words were spoken; (3) to bear testimony that the statement constitutes his will.

Were these several requirements met in the instant case?

What occurred is stated by a number of witnesses, who agree substantially. The statement of the record, Dr. Reed testifying, is as follows:

"Q. Did you have a conversation with him at that time? A. Yes.

"Q. Tell us what that conversation was. A. Well I walked in the room. John laid there in bed and I said, 'Hello John'—no, I said, 'How are you feeling John.' 'I am feeling bad,' he said. I said, 'John, you are a very sick man, some people get awfully sick and if you got anything you want to say, you better say it.' He said, 'I want to make a statement. I want to give Ida Hagood * * * I want Ida Hagood to have all my property; she has my bank book.' And I said, 'John make that statement to Dr. Millikin.' 'Well,' he said, 'will you be present?' Then he made the same statement to Dr. Millikin.

"Q. What did he say to Dr. Millikin? A. He said, 'Doctor, I want Ida Hagood to have all my property, she has my bank book.'

"Q. Now was anyone else in the room at that time? A. Miss Seeman.

"Q. Dr. Millikin, of course? A. Yes sir.

"Q. Anyone else? A. No, just us four.

"Q. What time was that? A. Between four and five o'clock.

"Q. You may state whether or not he said to you at that time that he wanted you to be a witness to the statement. A. He just made that statement.

"Q. Did he or did he not? A. Yes."

The decedent manifestly knew that he was expressing testamentary statements. He knew that both Dr. Millikin and Dr. Reed were listening to those statements. It was his intention that they should so listen. The statement was not an idle remark, thoughtlessly made in the presence of those

whose character as. witnesses he was not conscious —a situation against which the statute was evidently aimed. Particularly in the case of Dr. Reed it was his expressed wish that he should be present and listen. Both Dr. Reed and Dr. Millikin signed the certificate. We hold that the decedent's expression, referring to Dr. Reed, "Will you be present?" was as much a designation of Dr. Reed as a witness at the time of the testamentary statement as if the decedent had solemnly pronounced some such formula as "I particularly call upon you to bear witness to my testamentary disposition of my personal property." The statute contemplated no such requirement and to read into it any other provision than that some person should be consciously or purposefully designated as a witness, as distinguished from an idle eavesdropper, is unreasonable and contrary to its purpose and intent.

In this conclusion we are in accord with the text-writers, and with many authorities in other states where similar statutes have been under consideration. 40 Cyc., "Wills," 1137; 28 Ruling Case Law, 157, "Wills," Section 112; Alexander, Commentaries on Wills, volume 1, Section 182, page 212; *In re Garland's Will*, 160 N. C., 555, 76 S. E., 486; *Baird* v. *Baird*, 70 Kan., 564, 79 P., 163, 68 L. R. A., 627, 3 Ann. Cas., 312; *Bradford* v. *Clower*, 60 Ill. App., 55; *Harrington* v. *Stees*, 82 Ill., 50, 25 Am. Rep., 290; *Baker* v. *Dodson*, 23 Tenn. (4 Humph.), 342, 40 Am. Dec., 650; *Parsons* v. *Parsons*, 2 Me. (2 Greenl.), 298.

We come now to a consideration of the criticisms of the general charge. The language of the charge objected to is as follows: "The court tells you that

on the trial of an issue such as this case presents, the order of probate shall be *prima facie* evidence of the due attestation, execution, and validity of the will, and in order to return a verdict setting aside the will you must be able to find that the evidence adduced by the contestant, Anna R. Keller, outweighs both the evidence adduced by the contestee defendant, and the presumption arising from the order of the Probate Court admitting the will to probate as a valid will.''

It is urged that the words ''adduced by; the contestant'' limit the contestant to her own evidence, introduced by her. The Supreme Court in the opinion in the case of *Van Demark* v. *Tompkins, Exr.*, 121 Ohio St., 129, at page 132, 167 N. E., 370, definitely states that such is not the effect of these words:

''The use of the words 'adduced by the contestant' and 'adduced by the defendant' was intended in no sense as restricting the evidence to witnesses called by the respective parties, and this court has never so construed this journal entry in the *Hall case* [78 Ohio St., 415, 85 N. E., 1125]. It is to be regarded as a direction to the trial court in a retrial of that case to give proper instruction as to the effect of Section 12083, General Code.

''It is, of course, the general rule that the jury is to determine the issues from all the evidence in the case, not that produced and offered exclusively by one side or the other, but from the testimony of all witnesses, the depositions, and any other items of evidence admitted at the trial. Evidence may be adduced by the contestant of a will even though he adduces it from some of the witnesses offered by

the other side, and, of course, the converse of the proposition is true. The word 'adduced' is broader in its significance than the word 'offered,' and some of the synonyms are 'to present,' 'to advance,' 'to state,' 'to mention,' 'allege,' 'cite,' 'assign.' The Century Dictionary defines the word as meaning 'to bring forward proofs or evidence in support of some statement or proposition already made.'

"We think that the principle of law as given to the jury, in the light of the whole charge, would not violate the various pronouncements of this court, which, summed up, are to the effect that in order to set aside a will the evidence adduced in the case against the will must outweigh both the evidence adduced in favor of the will and the presumption arising from the order of the probate court admitting the will to probate as the valid last will and testament of the testator. *Kennedy, Exr.,* v. *Walcutt,* 118 Ohio St., 442, 161 N. E., 336, sixth syllabus.

"The language of the journal entry in the *Hall case* is not to be construed as limiting the testimony in a will contest to that offered and presented exclusively by one side or the other, but should be construed to mean all the evidence in the case, offered in support of the will or against it."

However, the court suggests that language conforming to the syllabus of the *Van Demark case* and the sixth syllabus of *Kennedy* v. *Walcutt* is "less liable to misconstruction" than that used in *Hall, Exr.,* v. *Hall,* 78 Ohio St., 415, 85 N. E., 1125, where the instant charge seems to have first unfortunately received its initial indorsement. We quote the sixth proposition of the syllabus in *Kennedy, Exr.,* v. *Walcutt, supra:* "In a will contest, by

virtue of the statute, the burden of proof is cast upon the contestant of the will and such burden never shifts from him; and before a jury would be justified in setting aside a will, the evidence adduced in the case against the will must outweigh both the evidence adduced in favor of the will and the presumption arising from the order of the probate court admitting the will to probate as the valid last will and testament of the testator.''

In the case of *Tudor Boiler Mfg. Co.* v. *Teeken,* 33 Ohio App., 512, 169 N. E., 704, 705, this court disapproved a charge on contributory negligence to the effect that ''the defendant may not prevail upon the defense of contributory negligence unless it proves the same by a preponderance of the evidence.'' This judgment was not disturbed by the Supreme Court on motion to certify. We feel the principle involved is the same.

It will be noted in the *Van Demark case* the court considered the portion of the charge in question in the light of the whole charge, which is not set out.

Reference to the charge of the court in the instant case shows no other portion helpful to a definite understanding by the jury, but, on the contrary, another portion criticized by the plaintiff in error certainly laid the whole charge open to a ''misconstruction'' which we are convinced was inevitable and constituted prejudicial and reversible error. We quote again from the charge in the instant case: ''If you find that the plaintiff has failed to prove by the degree of proof pointed out to you by the Court, one or more of the essential requisites in the paper produced as the verbal will of John Rothgiber, as pointed out to you by the Court, it would

be your duty to return a verdict sustaining the will."

The manifest effect of this language is to leave an impression with the jury that the plaintiff, the contestant, was obligated to prove the elements of the will and probate. Such a statement, coupled with a limitation to "evidence adduced by the contestant," in the minds of laymen, could not help but be misleading, if not positively conclusive in the minds of the jury, giving a completely erroneous conception of the position of the contestant as to her burden of proof.

A further assignment of error is that the court erred in admitting not only the testamentary statement in evidence, but also the attestation statement, signed by Dr. Millikin and Dr. Reed. The whole instrument read as follows:

"Last Will and Testament of John Rothgiber.

" 'I want to leave all my property to Ida Hagood and she has my bank book.'

"Mark Millikin
"Wm. S. Reed.

"We, being the above subscribers, hereby certify at Hamilton, Ohio, this 23rd day of January, A. D., 1929, that the foregoing testamentary words were spoken on the 20th day of January, 1929, by John Rothgiber at the Mercy Hospital in the City of Hamilton, Ohio, in our presence. Said testamentary words were spoken approximately two hours before the said John Rothgiber died. We also certify that we were the attending physicians in said case, and that the said John Rothgiber did die on the 20th day of January, 1929, about the hour of 7:07 P. M. That when said words were spoken said

John Rothgiber called upon Dr. Mark Millikin, being one of us, to bear testimony to said disposition of his will. That upon the death of said John Rothgiber said Dr. Mark Millikin and Dr. William S. Reed, being two competent, disinterested witnesses, caused said testamentary words to be transcribed and reduced to writing, and that said writing with our signatures subscribed as shown above was this day attached by us to this certificate of attestation, which thereupon was subscribed by us as appears below.

"And we further certify that said John Rothgiber at the time of said speaking was *in extremis,* but of sound mind and memory and not under restraint.

"Mark Millikin, residing at Hamilton, Ohio.

"Wm. S. Reed, residing at Hamilton, Ohio."

The entry of the probate court probating the will was also in evidence. The entire instrument was probated, and the probate court found the provisions of the statute had been carried out, and that the instrument coupled with the evidence presented to it showed that the deceased had made a verbal or nuncupative will.

From a reading of Sections 10503 and 10505, General Code, it is apparent that by the term will is meant the whole testamentary instrument. Section 10505 provides how a will, not nuncupative, is made. Section 10601 provides for the making of a nuncupative "will." We think from these sections of the Code it is apparent that a nuncupative will is completed with the testamentary statement and the signatures of the witnesses. The so-called attestation clause was surplusage, and if included in

the instrument probated should have been excluded from the jury's consideration by effective measures.

Section 10601, General Code, provides that a verbal will shall be valid if the essential elements and requirements are proved by the attesting witnesses. In the absence of such proof, even in the face of a certificate, the validity of the verbal will would fail. While we do not consider the admission of the clause so prejudicial as to warrant a reversal in itself, we feel that in view of other reversible error, considered elsewhere, upon a retrial of the cause such statement should be excluded.

It is urged that the verdict was against the weight of the evidence. We think this conclusion untenable.

The giving and refusing certain special charges were also made the subject of an assignment of error. The record shows no objection by plaintiff in error to the charges when given and only a general exception by the plaintiff in error to the giving of the special charges and the refusal of a special charge requested by plaintiff in error. These general exceptions appear in the record after the giving of the general charge. The objections were not seasonably made nor the exceptions effective. No argument appears thereon in the brief of plaintiff in error. We find no prejudicial error upon consideration of this assignment of error.

For the reasons given the judgment of the court of common pleas of Butler county must be reversed, and the cause remanded to that court for a new trial.

*Judgment reversed and cause remanded.*

HAMILTON, J., concurs.