[This opinion has been published in *Ohio Official Reports* at 74 Ohio St.3d 519.]

KRETZER ET AL., APPELLANTS, *v*. BRUBAKER ET AL., APPELLEES.

[Cite as *Kretzer v. Brubaker*, 1996-Ohio-178.]

*Wills—Contractual requirement of devising family farm to specific class of individuals met when devise made to a narrow subset of the broad class.*

(No. 94-2039—Submitted at the Van Wert Session October 25, 1995—Decided February 14,1996.)

APPEAL from the Court of Appeals for Henry County, No. 7-94-4.

_____

{¶ 1} In October 1956, the brothers and sisters of Earl E. Brubaker and their spouses executed a warranty deed transferring their interest in the Brubaker family farm to Earl E. Brubaker and his wife, Nettie Brubaker. The warranty deed states that part of the consideration for the transfer of the property was that Earl and Nettie Brubaker would provide a home for Earl's sister, Sarah J. Brubaker, for her natural life.

{¶ 2} On November 12, 1956, Earl and Nettie Brubaker executed an agreement to make wills. In the agreement, Earl and Nettie acknowledged that in consideration for the transfer of the family farm at a nominal price, they had agreed with Earl's brothers and sisters to draft wills keeping the subject real property titled "on the Brubaker side of the family." Earl and Nettie executed wills on the same date, referring to the agreement and devising the family farm to each other, with the provision that the survivor of them would provide a home for Sarah J. Brubaker. Earl Brubaker's will further devised the subject real property to his "blood nephews" in the event that Nettie Brubaker predeceased him

{¶ 3} Nettie Brubaker predeceased Earl Brubaker, leaving all of her interest in the subject real property to Earl. In October 1990, Earl Brubaker executed a codicil that changed several provisions in his will to reflect the death of his wife,

but did not change the devise of the family farm to his blood nephews. Earl Brubaker died February 29, 1992.

{¶ 4} Appellants, Ruth Kretzer and the other surviving nieces and grandnieces of Earl Brubaker's deceased brothers and sisters, brought this action asking the court to order the executor of the estate of Earl Brubaker to convey the subject real property to all parties, not just to appellees Thomas Brubaker, Sr. and the other blood nephews of Earl Brubaker. Appellants argued that the language in the agreement to make a will prevails over the conflicting language in Earl Brubaker's will, and that all the parties constitute "the Brubaker side of the family." The trial court granted the motion for summary judgment filed by the appellants, and ordered the executor to transfer the subject real property to both the nieces, grandnieces, and nephews of Earl Brubaker. The Third District Court of Appeals reversed and remanded, holding that the words in both the agreement and the will are clear and consistent in providing that the family farm is to pass to the blood nephews of Earl Brubaker.

{¶ 5} This cause is now before this court upon the allowance of a discretionary appeal.

———————————

*John Donovan*, for appellants.
*Edmund G. Peper*, for appellees.

———————————

**MOYER, C.J.**

{¶ 6} In this case, we are asked to determine whether an agreement to make a will or the actual will itself controls in determining the intent of the testator.

{¶ 7} We have held that a valid contract to make a will may be specifically enforced against the heirs of the promisor if a will is not executed. *Emery v. Darling* (1893), 50 Ohio St. 160, 165, 33 N.E. 715, 716. Both parties have stipulated that the agreement to make a will ("the agreement"), executed by Earl and Nettie

Brubaker in 1956, is valid and enforceable. However, in the instant case, Earl Brubaker did make a valid will contemporaneously with executing the agreement. Thus, the issue becomes whether the agreement and the will are in conflict with each other.

{¶ 8} It is well established that "[t]he cardinal rule of interpretation of a will is to ascertain the meaning and intention of the testator." *Anderson v. Gibson* (1927), 116 Ohio St. 684, 157 N.E. 377, paragraph one of the syllabus. The agreement, incorporated into the will by reference, provides that "in consideration for such sale of the above described premises at such reduced price the undersigned have agreed with said brothers and sisters of the said Earl E. Brubaker, that Wills shall be set-up by the undersigned providing for the keeping of title in the above described premises on *the Brubaker side of the family*, and, *** such Wills have been made on this date by the undersigned, containing such provisions[.] ***" (Emphasis added.) Finally, the agreement provides that "it is mutually understood between the undersigned that such Wills as are this date executed may be changed in any way by the undersigned as long as such changes do not effect [sic] the agreement entered into herein for keeping the above described premises titled in *the Brubaker side of the family*." (Emphasis added.)

{¶ 9} In his will, Earl Brubaker devised the family farm to Nettie "absolutely and in fee simple, it being understood as between my beloved wife and myself, that my said wife shall provide a home for my sister, Sarah J. Brubaker, if my said sister shall be living at the time of my decease and providing further that my said wife, under a written agreement entered into this date between my wife and me and my brothers and sisters wherein both my wife and I have agreed that the above described *premises shall remain titled in the Brubaker side of our family* and under which agreement my wife has agreed not to change her Will made this date, leaving the above described real estate to the Brubaker side of the family, if I have predeceased her. ***

**{¶ 10}** "If my beloved wife, Nettie Brubaker, has predeceased me, I then give and devise the above described real property, absolutely and in fee simple, *to my blood nephews*, living at the time of my decease, share and share alike, and request that such real property not be sold to a stranger, but that such nephews shall sell their interest in said property to one or more of my blood nephews who may be willing to purchase such property from the other devisees."  (Emphasis added.)

**{¶ 11}** We discern no conflict between the promises of the agreement and the devises of the will.  When interpreting a will, this court has held that "if that language is such that its meaning is clear, and if the words employed are unequivocal and unambiguous, they should be given their ordinary meaning and natural effect[.]" *Anderson* at 687, 157 N.E. at 378.  The language in the agreement establishes a class of devisees in providing that the title to the family farm is to remain "on the Brubaker side of the family." The will would unambiguously comply with the intent of the agreement, whether Earl devised the farm to some, one or all members of "the Brubaker side of the family," so long as the will was drafted consistently with that general limitation. Thus, the will satisfies that requirement by devising the property to a narrow subset of the broad class, namely, the "blood nephews" of Earl Brubaker.

**{¶ 12}** The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

————————————