JOHN D. AHALT and CARLTON P. AHALT, Executors *vs.* SAMUEL HERSPERGER, and others. SAME *vs.* SAME.

### *Construction of Will.*

A testator, after reciting the fact that he had made a will, and had bequeathed certain legacies to three grandchildren, made a codicil, in which he stated "that in the event of loss to my estate by my being security or endorser for others, and my executors have to pay the same, then I desire that my said grandchildren * * * shall pay their proportionate share of the same, * * and shall be withheld by my executors." Prior to the execution of this codicil the testator discharged certain indebtedness for which he had become liable as security for his brother. HELD:

That the debt thus incurred by the testator and paid in his lifetime, was not such a loss as it was intended by the codicil should be borne by the grandchildren.

APPEALS from the Circuit Court for Frederick County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, IRVING, BRYAN, and FOWLER, J.

*John Prentiss Poe,* for the appellants.

*William P. Maulsby, Jr.,* for the appellees.

IRVING, J., delivered the opinion of the Court.

Samuel Ahalt, of Frederick County, died in 1889, leaving a will which was executed in eighteen hundred and

seventy-six. By that will he gave three grandsons, Samuel Hersperger, William Hersperger and Ellmore Hersperger (children of his deceased daughter) each the sum of two thousand dollars, the principal sum to be paid to each at the age of twenty-five years, with interest thereon to be paid annually from the time each was twenty-one years old until he was twenty-five, and could receive the principal. All the rest of his estate, real and personal, which was quite large, was given to testator's two sons, John D. Ahalt and Carlton P. Ahalt; and the testator directed "that in the event of my owing any claims at my decease, my two aforesaid sons to pay the same, share and share alike."

On the third of August, eighteen hundred and eighty, reciting the fact of having made his will, and having given his three grandchildren each, mentioning them by name, two thousand dollars "on certain conditions therein named," he made the following codicil: " Now, therefore, I do, by this my writing, which I hereby declare to be a codicil to my said last will and testament, and to be taken as part thereof, order and declare that my will is that, in the event of loss to my estate by my being security or indorser for others, and my executors have to pay the same, then I direct that my grandchildren, Samuel, William and Ellmore Hersperger, shall pay their proportionate share of the same, that is to say, one-third of the said loss equally between them, and shall be withheld by my executors heretofore named in my will." The executors named in the will are the two sons to whom he gave the residue of his estate charged with the payment of debts due by testator.

Afterwards on the 14th of May, 1888, he added a second codicil as follows: "Whereas, I, Samuel Ahalt, am desirous to change the provisions of my said last will and testament, dated on the 30th day of August, 1876, I do hereby make this second codicil thereto."

"And whereas, I did bequeath to my grandchildren, Samuel, William and Ellmore Hersperger, children of my deceased daughter, Amanda Catharine, two thousand dollars, with interest from the time they arrived at the age of twenty-one years, it is now my will, and I direct that my executors shall only pay them the principal sum of two thousand dollars without any interest upon their arrival at the age of twenty-five years." The bill in this case was filed to obtain a construction of the will and these codicils, and asks for a decree directing the executors to pay to each of testator's grandsons the sum of two thousand dollars, with interest from the date that each of them reached the age of twenty-five years.

The defendants, the executors of the will, resist the construction contended for by the plaintiffs and which is the basis of their prayer for relief, and contend that the testator incurred, as security and endorser of his brother Joshua Ahalt, an indebtedness amounting to about forty-three hundred and ninety-five dollars, of which the plaintiffs, in consequence of the provisions of the first codicil, are bound to pay one-third thereof, and the defendants are authorized to deduct from the amounts bequeathed to the plaintiffs; and that the plaintiffs, therefore, are each only entitled to receive about fifteen hundred and eleven dollars and sixty-six and two-thirds cents.

We learn from the very lucid opinion of the Court below that it has already been decided by that Court in another proceeding in equity, that the second codicil did not revoke the first codicil, and that being an unappealed and unreversed decision, this case must be decided with that as *concessum* in the case; but that decision does not in any way embarrass us in deciding this case, for we cannot see that such decision was in any degree in the way of the Court in deciding as it did in this case, and as we think entirely right. The real questions in the

case are 1st, what kind of loss is contemplated by the first codicil that the grandsons are required to share in paying; and 2nd, are there any such losses which the executors have had to pay, which curtail the amounts given to the grandsons by the second codicil.

The general rule of construction is, in finding the intention of a testator, we must look at the language he has used, and adhere to the ordinary and usually accepted meaning of the words employed, in arriving at his meaning. In *Gundry vs. Pinniger*, 1. *De G.*, *McN. & G.*, 501, it is said to be a cardinal rule, "to adhere as closely as possible to the literal meaning of the words; and in *Larmour vs. Rich*, *et al.*, 71 *Md.*, 381, this Court says: Obviously the most simple and the most natural way to ascertain what a testator's or a grantor's intention was, is to read what he has written, because what he has written was designed by him to express that intention." If the words used have a fixed or technical meaning, adherence must be more rigidly maintained, though sometimes the intention is thereby defeated. In *Lomax vs. Holmden*, 1 *Ves. Sr.*, 294, Lord HARDWICKE says: "Whatever the intention, if there are not words in the will to warrant it, either express or implied, it cannot have effect." Thus we see that we are to find the meaning from the words used. Applying this rule, and having no reference to any extrinsic facts, it seems very clear that when the testator used the language found in the first codicil, he was contemplating the likelihood of his *estate* being held answerable for some securityship or securityships. The language is, "in the event of loss to my estate by my being security or indorser for others, and my executors have to pay the same." It is not losses he may suffer from that cause before his death that he is providing for his grandsons to share in paying. It is loss to *his estate* which his *executors* may have to pay, not what testator may have had to pay. The natural and literal meaning of the words used lead to no other interpretation.

The extrinsic facts which have given rise to the contention over the meaning of the testator are these: After making his will the testator discovered he was in danger of loss by securityship for his brother, Joshua Ahalt. He was surety for him for a large amount, and one, Samuel Maught, was jointly bound with him in that obligation. Then the first codicil was made, and when made, the language used was the most natural and appropriate language to accomplish the design the testator had with reference to the contingencies that were possible. Subsequently Joshua Ahalt's property was sold and applied, and the liability of the two sureties was found to be something over eight thousand dollars. This was divided between the sureties, and was paid. The amount falling upon this testator was ($4160.00) forty-one hundred and sixty dollars. The testator paid it, and became indebted personally to those from whom he borrowed the money to liquidate the debt. Having become a personal obligation and indebtedness to the various people from whom he borrowed, it was no longer a suretyship liability such asw as contemplated by the first codicil; but these claims against him fell literally within the provision of the will "that in the event of my owing any claims at my decease, my two aforesaid sons to pay the same, share and share alike." Then in 1888 came the second codicil. The security debt for Joshua Ahalt had been paid by incurring other personal obligations. This codicil changes the will's provision for the grandsons, and fixes the sum to be paid them severally at two thousand dollars when they should respectively reach twenty-five years of age, without the interest from the age of twenty-one which the will directed to be paid. It did not revoke the first codicil, for that provided for suretyships generally, and named no special one. If, therefore, there should be any other than the one which the testator *had paid off*, this sum named by this codicil to be paid his

grandsons, would be liable to abatement on account thereof, under the first codicil, to the extent of one-third part of any such suretyship which the executors should have to pay from the estate in their hands for settlement. But the losses by reason of the suretyship for Joshua Ahalt, having fallen upon him in his life-time, and having been paid off by him before his death, at the cost of creating personal debts, did not fall within the description of losses provided for in the first codicil. The fact that the interest which would have accrued on the six thousand dollars given to the grandsons in the four years from the age of twenty-one to twenty-five amounts to a little more than one-third of the actual loss the testator sustained by the failure of Joshua Ahalt, for whom he was security, shows that the testator, so far as that suretyship was concerned, was abating his grandsons' legacy to the extent of their share thereof, and was by the second codicil fixing the exact amount which the grandsons were to receive as he then understood the condition of his estate. If the executors should have to pay anything for some other indorsement, the grandsons would have to abate proportionately.. They, (the executors), set up no claim for any such loss as we here indicate. Being the last expression of the will of the testator, and falling under the rule that the will speaks as of the death of the testator, it ought to prevail. No fault has been found with the decree because the legacies were decreed to be a charge on the real estate given to the sons. Indeed, it is conceded in the answer that whatever is to go to the plaintiffs is a charge on the defendants' lands taken under the will.

The decree of the Court first directed that the plaintiffs be paid each the sum of two thousand dollars with interest from the day that they were respectively twenty-five years old. Before the term had elapsed the Court passed an order reciting an error in the decree, as respects the date from which interest should run; and, instead of

running from the day plaintiffs reached the age of twenty-five, the decree was by this order corrected and amended so that interest should run from the 31st of January, 1891. Appellants took an appeal, both from the decree and the order modifying it. From what we have said, it is clear that the Court below was right in the view it took of the will and codicils, and of the general right of plaintiffs to recover. There is certainly no reason why the appellants should complain of the order modifying the decree, and the plaintiffs did not appeal from it. The appellants, having no just ground of complaint, the action of the Court will be affirmed in both particulars, and on both appeals.

*Affirmed, with costs.*

(Decided 10th December, 1891.)