SALLIE SISSON ROBINSON ET AL. *vs.* CHARLES J.
BONAPARTE, SUBSTITUTED TRUSTEE, &C., ET AL.

*Construction of a Will Directing Trustees to Apply Income to the Support of Children—Disposition of Accumulated Income—Termination of Trust.*

A will directed the trustees, to whom certain property was devised and
bequeathed, to apply so much of the rents and profits thereof as may
be necessary and fully sufficient for the proper education and mainten-
ance of the children of the testator and of their respective issue, until
the period of twenty years after the death of the testator and the death
of his wife at which time the trust was to terminate. The testator left
surviving him a widow and three children and the trust was adminis-
tered under the supervision of a Court of equity. A new trustee was
substituted in the place of those named in the will and he found that a
considerable sum had been accumulated from income unexpended.
Upon his application for directions as to the administration of the trust,
*held*, that the whole income of the estate is to be treated by the trus-
tee as a common fund, applicable to the education and maintenance of
the children and of their issue, as forming one class of individuals, the
amount to be applied to each to be determined from time to time by
the trustee with the concurrence of the Court.

*Held*, further, that the accumulated income, being a surplus not hereto-
fore used for the maintenance of the children, does not form a part of
the capital of the estate, but is to be held by the trustee as income, so.
that if at any time during the continuance of the trust that amount
should be required for the maintenance of the children and their issue
it may be used for that purpose as a common fund.

A testator devised property to trustees with directions to apply the in-
come to the support of testator's children "until the expiration of the
period of twenty years after my death and the death of my wife, at
which period" the property was made to vest absolutely in the chil-
dren. By another clause of the will one-third of the testator's real es-
tate was given to his wife for life, and the trustees were directed to ap-
ply the income arising from that after her death also to the maintenance
of his children. *Held*, that the trust does not terminate upon the death
of the testator's wife, in case that should occur twenty years after the
death of the testator, but it lasts until twenty years after the death of
the testator's wife, and although the trust may continue for more than
fifty years it is not in conflict with the rule against perpetuities.

Appeals from the Circuit Court of Baltimore City (HAR-
LEN, C. J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Wm. Pinkney Whyte,* for the appellants.

*Bernard Carter,* for Walter R. Abell, appellee.

*Wm. Reynolds* (with whom was *W. Hall Harris* on the brief), for Charles J. Bonaparte, Trustee.

McSHERRY, C. J., delivered the opinion of the Court.

This appeal comes up on a special case stated under the forty-seventh General Equity Rule, and the three questions propounded for decision relate to a portion of the estate disposed of by the last will of Walter R. Abell, deceased. By the second clause of that will all the testator's property both real and personal was devised and bequeathed unto his two brothers who were then living, upon trust, first, to value each and every parcel of his real estate and then to set apart one-third portion in value thereof, and the whole of that one-third portion to manage according to their best discretion and to collect the rents, issues and profits thereof, and to pay quarterly the clear rents, issues and profits to his wife Philomena Abell for the period of her natural life ; and secondly, to value, each and every part of his personal estate and then to set apart one-third portion thereof and to transfer and make over that one-third portion to his wife as her absolute property in bar of her share in the personal estate belonging to the testator. Then by the third clause the following provision is made : "And in trust to apply so much of the clear rents, issues and profits of the remaining two-thirds parts in value of my real estate, during the lifetime of my wife, and of all of my said real estate, in whatsoever form the said two-thirds, or whole, real estate may be invested, after the death of my said wife, or of all my said real estate, if my said wife should die in my life-time, and of the remaining two-thirds parts in value of my personal estate, during the lifetime of my said wife, and of all my said personal estate, in whatsoever form the same may be.

invested, if my said wife should die in my lifetime, as may be necessary and fully sufficient, for the proper education and maintenance of my children and of their respective issue, until the expiration of the period of twenty years after my death and the death of my wife; at which period of time the said real and personal estate then forming part of the trust hereby created, in the form in which the same shall then be invested, together with any increment thereto, or surplus of income, or property, proportionably arising therefrom, and forming part of said trust, shall vest absolutely in my children, as tenants in common; the issue of any deceased child taking, by substitution, the share which his, her, or their parent, would have taken if, living at such period; and I direct that until such time of vesting of the said property in my said children, or their issue as aforesaid, shall arrive, the share of any daughter, or of any daughter of any daughter, in the said rents, issues and profits thereof, shall be paid to such daughter, or daughter of any daughter, upon her separate receipt, free from the control of any husband she may have." Then follow other clauses which give to the trustees very large discretionary powers. The will is dated July 3rd, 1889. Mr. Abell died January 3rd, 1891, leaving a widow and three children by a former marriage. Two of these children are daughters and both have since married. The other is a son, who is still under twenty-one years of age. The two trustees named in the will subsequently died but not until after they had entered upon the discharge of the trusts created by the clause just quoted; and later on Mr. Charles J. Bonaparte was appointed substituted trustee in their place. Mr. Bonaparte ascertained that the former trustees had accumulated from unexpended income, and had invested a fund amounting to $76,357.93, which they called "surplus income investments;" and he was confronted with the question as to who should determine what amount of the accruing income arising on the trust estate ought to be expended and in what proportions it ought to be disbursed for the *cestuis que trustent*, who are the three children of the testator. There arose, too, a doubt as to the length of

time the above mentioned trust was intended to continue. In view of this situation the pending amicable case stated was made up and the following specific questions were submitted for decision : First, who is authorized to determine what amount may be necessary and fully sufficient for the proper education and maintenance of the children of the testator and of their respective issue during the continuance of the trust ? Is it a matter to be determined from time to time by the Court or by the substituted trustee and his successors in his or their discretion, subject to the approval of the Court ; or is it a matter within the absolute discretion of the substituted trustee and his successor and how is the said matter to be determined? Second. Is it the duty of the substituted trustee after deduct- ing each year from the entire net income from the trust estate in his hand the amount necessary for the education and proper maintenance of all the children of the testator and of their re- spective issue, to invest the whole surplus of the said income as a part of the *corpus* of the trust estate, or if not the whole, for what purposes may he withhold from said investment a part of the said income ?    Or should he divide the whole net income each year into three equal parts appropriating one of said parts to each of said three children and after deducting from the parts so appropriated to each child the amount ex- pended for the education and maintenance of such child or its issue, to hold the remainder for the individual benefit of such child and its issue during the continuance of the said trust and at the end of said trust to form part of the said child's share of the *corpus* of the trust estate ?    Or should he pay over to the said children of the testator, or to any one of them, or to the issue of any of them, before the expiration of the period of twenty years after the death of the said widow of the tes- testator, the whole or any portion and, if any, what portion, of the income from the said trust estate in his hands, over and above what may be determined to be necessary and fully sufficient for their education and maintenance ? and if so when should he pay it and to what person ? Third. How should the $76,357.93 hereinbefore mentioned be dealt with ?

The Court below answered these interrogatories in the following way by its decree:

"This cause having been submitted upon a special case stated in conformity with the 47th and 48th General Equity Rules, the counsel for the parties were heard, and the proceedings read and considered.

"It is thereupon this twenty-fifth day of February, A. D. 1905, by the Circuit Court of Baltimore City, in answer to the questions in said special case propounded, adjudged, ordered and decreed. That by the true construction of the last will and testament of Walter R. Abell, it is the duty of the trustee to apply, during the continuance of the trust to the education (during its progress), and maintenance of Marie Louise Edwards, Sallie Sisson Robinson, and Walter R. Abell, the children of the said Walter R. Abell, the testator, and their respective issue, so much of the clear rents, issues and profits of the trust estate coming into the hands of the trustee under the third article of said will as shall be from time to time fully sufficient for the education and maintenance respectively of each of said children and their respective issues, the said clear rents, issues and profits to be treated by the trustee as a common fund applicable to the purpose of the education and maintenance of said children and their respective issue (no one of said children or of their respective issue having a separate right in said fund), and the amount to be applied by such trustee to each of such children and their respective issue shall be ascertained and determined upon by the trustee, from time to time, with the concurrence of this Court, upon the report made to it by the trustee as hereinafter set forth; and in fixing, from time to time, upon the amount of the clear rents, issues and profits to be applied to the maintenance and education of the said children and their respective issue, regard shall be had to the wants and requirements of the said children of the testator and of their respective issue, in connection with, and as affected by their position in the community in which they live and their social station and surroundings.

"It is further adjudged, ordered and decreed, that the trus-

tee, as soon after the passage of this decree as he can conve-
niently do so, shall determine what amount out of the clear
rents, issues and profits of the trust estate should constitute
the yearly allowance, in his judgment for the maintenance of
the said Marie Louise Edwards, and of the said Sallie Sisson
Robinson, and what amount should constitute the yearly
allowance for the maintenance and education of Walter R.
Abell (his education being still in progress), and make report
thereof to this Court in the case of *Arunah S. Abell and
Walter R. Abell* v. *Philomena M. Abell et al.*, No. 3315A
Docket No. 44A, folio 77, in which jurisdiction over said trusts
has been assumed by this Court, and give notice of said report
to the parties in interest, in order that if the amounts so fixed
by said trustee shall meet with the concurrence of this Court,
an order may be passed by it to that effect for the protection
of the trustee, the Court reserving to itself the right to make
changes in the said amounts.    And the trustee whenever and
as often as in his judgment, any change should be made in
either of the amounts above directed to be ascertained by him,
is hereby authorized and directed to make such changes and
report his action in regard thereto to this Court in order that
appropriate orders may be passed in respect thereto; giving
notice of any report to the parties in interest.    And it is
further adjudged, ordered and decreed, that the sum of
$76,357.93 mentioned in the special case stated as "Surplus
Income Investments," being the amount of income derived
from the trust estate since the death of the testator, and not
used for the education and maintenance of the said children,
does not now form a part of the capital or *corpus* of the trust
estate, but must be held by the trustee as investments of in-
come; so that if at any time during the continuance of the
trust the amount so invested shall be needed to supply the
amount required for the proper education and maintenance of
the said children of the testator and their respective issue, it
may be available for that purpose, and as forming a common
fund for that purpose, in the same way as the income from
the present *corpus* or capital of the trust estate is hereinbefore

directed to be applied by the said trustee; and the said trustee is hereby directed to invest, as a part of this common fund, all of the dividends or interest derived during the existence of the trust from the said $76,357.93, and also all part if any of the net income accruing during the existence of the trust from the *corpus* or capital of the estate mentioned in the special case stated or from any substituted investment thereof which is not required to be applied for the education and maintenance of the children of the testator, and their respective issue.

"And it is further adjudged, ordered and decreed, that by the true construction of the last will and testament of Walter R. Abell, the trust created by the third article thereof, lasts until the expiration of twenty (20) years from the death of Philomena M. Abell, the wife of said Walter R. Abell.

"And it is further adjudged, ordered and decreed that the costs of this case, including solicitors' fees to the solicitors for the plaintiff and the solicitors for the defendants, be paid by the plaintiff, trustee, out of the above-mentioned 'Surplus Income Investments,' allowance for said costs and fees be made to the trustee in the above referred to case of *A. S. Abell et al.* v. *Philomena M. Abell et al.*, No. 3315A, Docket No. 44A, folio 77, etc."

The two daughters and their husbands as well as the infant son of one of the daughters by his father as guardian, have appealed from this decree.

The main point of contention is as to the duration of the trust, but as the appeal brings up the entire decree we will consider the several matters covered by it in the order in which the questions were propounded in the case stated. First, then as to the question with respect to the duty of the substituted trustee concerning the division of the income amongst the beneficiaries. The original trustees were directed to apply so much of the clear net income derived from the trust estate as might be necessary and fully sufficient for the proper education and maintenance of the children of the testator and their respective issue during the period that the trust was to last and, of course, that same duty now devolves on the substituted

trustee. There is no suggestion or direction that any ascer-
tained or definite portion of the net income is to be applied to
or expended for any particular one of the beneficiaries, but the
trustee is charged with the duty to apply so much of the fund
as will be necessary and sufficient for the proper education and
maintenance of all of the children, and of their respective issue
and for their maintenance after their education has been com-
pleted ; and consequently the conclusion would seem to be
irresistible, that the testator designed to treat the children and
their respective issue as forming one class of individuals.
Dealing with them as a class of individuals, which class would
necessarily include children and might and probably would
take in the descendants of deceased children, it is a reasonable
inference that he contemplated and foresaw that the needs and
requirements of one child might be greater than those of
another, inasmuch as some might have issue and some might
not, or some might, for other reasons, need a larger income
than others. The primary duty, therefore, of determining
what amount would, from time to time, be fully sufficient for
the education and maintenance of each of his children, or for
the maintenance of each of them, after their education had
been completed, had to be entrusted to some one—the scheme
of the will required that it should be—and it was committed
by the testator to the trustees named by him and it now de-
volves on the substituted trustee. It was a wide and large dis-
cretion thus reposed but it is subject to the supervisory con-
trol of the Court which now has jurisdiction over the trust.
The conclusion reached by the Court below in the decree on
this branch of the case does not seem to be seriously con-
tested and is fully supported by authority. We need only re-
fer to the case of *Pole* v. *Pletsch and Thiede*, 61 Md. 570.

*Secondly.* For how long a period was it the intention of the
testator that the trust should continue ? We need not have
recourse to decisions interpreting other wills to aid in the con-
struction of this one. As was said by MR. JUSTICE MILLER
in *Clark* v. *Bowman, Executor*, 18 Wallace, 493, "of all legal
instruments, wills are the most inartificial, the least to be gov-

erned by the settled use of technical legal terms. * * * Under this state of the science of the law, as applicable to the construction of wills, it may well be doubted if any other source of enlightenment in the construction of a will is of more assistance, than the application of natural reason to the language of the instrument under the light, which may be thrown upon the intent of the testator by the extrinsic circumstances surrounding its execution, and connecting the parties and the property devised with the testator and with the instrument itself." What a testator has said in his will is the best guide toward ascertaining what he meant; and what he has written, when the words he has employed are plain and unambiguous, was obviously designed to declare what he intended should be done. The phrase which gives rise to the conflicting interpretations respectively contended for is in the following words; that the trust should continue *"until the expiration of the period of twenty years after my death and the death of my wife."* On behalf of the appellants it is insisted that this should be read as if the words were "until the expiration of twenty years after my death and until the death of my wife." This would necessitate the insertion of the word "until" after the word "the" and before the words "death of my wife," though the testator did not put the word there. But there is nothing on the face of the will, or in the circumstances that surrounded the testator, to justify such an interpolation—an interpolation, too, which palpably changes the sense of the language actually employed. On the part of the appellee it is insisted that the trust does not terminate until the expiration of twenty years from the death of the testator's widow, who is still alive. The words which the testator has used must receive their full and ordinary signification, and the trust which he explicitly declared should last until the expiration of the period of twenty years after his death and the death of his wife cannot be curtailed and made to terminate upon the death of the widow if that should happen at any time after twenty years from his decease, without doing violence to the explicit terms defining the duration of the trust, and without disregarding

other provisions contained in the same clause. He obviously contemplated the continuation of the trust beyond the period of his wife's death, because he expressly declared that the trustee should apply so much of the clear rents and profits arising from two-thirds of the real estate *during the life of his wife*, and from the whole of the real estate *after the death of his wife*, as might be necessary, etc., for the education of his children. Now, it will be remembered that under the second clause of the will one-third of his real estate was directed to be set apart for his wife during her life and the whole of the income arising from that one-third was appropriated to her. If the trust is to terminate after the expiration of twenty years from his death and at the moment his widow dies, then upon *her* decease after that period the trustees would have no authority to apply the income arising from the one-third part of the real estate so set apart for her during her life, because upon her death, according to this contention, the trust would cease and the property itself included therein, would absolutely vest in the children. It has been objected, however, that possibly the trust may extend over a very long period of years. At the time that the will was executed Mrs. Abell was but twenty-six years of age and it has been argued that she may continue to live for a number of years longer, in which event, if the trust lasted for twenty years beyond her decease it might extend for half a century or more. But inasmuch as the period prescribed by the testator does not contravene the policy of the law, and is not and cannot possibly be repugnant to the rule against perpetuities, he had a perfect right to prolong the trust for the period which he designated, and though the Courts might think it ought to be shorter in duration than the testator has seen fit to limit it, yet he having the right to prescribe that period the Courts have no authority to restrict it to a shorter period by arbitrarily inserting words which the testator did not use. We think the construction placed by the Court upon the will in this particular was right.

The only remaining inquiry relates to the surplus income investments. As we fully concur in the conclusion reached

by the Court below in its decree on this branch of the case as that conclusion is set out at length in its decree heretofore quoted, we need say no more concerning it.

Inasmuch as there is no error in the decree appealed from it will be affirmed in all respects, the costs to be paid out of the income in the hands of the substituted trustee.

> *Decree affirmed with costs, the costs to be paid out of the income in the hands of the trustee.*

(Decided June 21st, 1905.)