GEORGE H. WEST, GUARDIAN AD LITEM OF MARY
    THERESE SELLMAYER ET AL, INFANTS, *v.* MARIE
        SELLMAYER, AN INFANT, ET AL.

LOUIS SELLMAYER ET AL. *v.* MARIE SELLMAYER,
            AN INFANT, ET AL.

GEORGE SELLMAYER ET AL. *v.* MARIE SELL-
        MAYER, AN INFANT, ET AL.

JOHN SELLMAYER ET AL. *v.* MARIE SELLMAYER,
            AN INFANT, ET AL.

*Construction of Will—Equality Among Children—Showing Of
    Purpose—Undisposed Of Income—Accumulation—
                Division Of Corpus.*

In construing a will, it is for the court to ascertain from the
language, in the light of surrounding circumstances at the time
of the making of the will, what was the testator's intention as
to the disposition of the property, and if such intention can be
definitely ascertained, to give full effect to it, unless it contra-
venes some positive and well settled rule of law or of property.
                                                        p. 480

A court has no authority to ascribe to the testator a particu-
lar intention because under the circumstances it may have a
conception of what the testator should have intended.    p. 481

While a will takes effect from the date of testator's death,
it must be interpreted as of the date of its execution, and in
the light of the circumstances then surrounding and known to
the testator.                                            p. 481

A construction cannot be adopted which would mean practical
equality among the objects of testator's bounty, because of
occurrences after testator's death, unless the same interpreta-
tion, made at the time of the execution of the will, would have
brought about the same result.                           p. 481

A purpose of equality as between testator's widow and five children *held* to be shown, the will providing for an advance to each child from the corpus of the estate of $70,000 on his or her arrival at a named age, and that each child's share in the income be reduced one seventh for each $10,000 so advanced, and the share in the income of any child dying without issue being divisible between the widow if living, surviving children, and the issue of any child who died before receiving his $70.000.                                   pp. 485-487

A will giving the income from a trust fund to testator's widow and children, and providing for payments from the corpus to the children as they arrived at named ages, each child's share in the income to cease on such payment to him, *held* that any income undisposed of by reason of such cessation of payments should be accumulated and become part of the corpus, payable at the termination of the trust to those entitled to the residuary estate, rather than divided among the children still entitled to income, particularly as the latter construction would involve giving the youngest child from two to four times the income received by any one of the others.   pp. 487-490

A provision in such will that, after the youngest child received its payment from the corpus, the whole of the trust assets should be divided "among those then entitled to the income therefrom in the proportion hereinbefore provided," *held* properly to be construed as if the quoted words read "among those heretofore entitled to the income therefrom in equal proportions," this construction harmonizing with the testator's general intent of equality among his children, and a literal construction involving a possibility that a child of a deceased child might receive many times the amount received by any child of testator.
                                                          pp. 490-493

*Decided April 9th, 1926.*

Appeals from the Circuit Court of Baltimore City (SOLTER, J.).

Bill by Louis Sellmayer and Mamie M. Sellmayer against Marie Sellmayer, an infant, and others, for the construction of the will of Ludwig Sellmayer, deceased. From the decree rendered, George H. West, guardian *ad litem* of Mary Therese Sellmayer and Therese K. Sellmayer, Louis Sellmayer and Mamie M. Sellmayer, George Sellmayer and

Edward Sellmayer, and John Sellmayer and Katherine Sellmayer, separately appeal. Reversed in part.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*George Weems Williams,* for George H. West, guardian *ad litem.*

*Randolph Barton, Jr.,* with whom was *James J. McGrath* on the brief, for Louis Sellmayer.

*C. John Beeuwkes,* with whom were *Emory, Beeuwkes & Skeen* on the brief, for George and Edward Sellmayer.

*John A. Farley, Joseph Sherbow* and *Coady & Farley,* submitting on brief, for John and Katherine Sellmayer.

*Charles McHenry Howard,* for Marie Sellmayer.

DIGGES, J., delivered the opinion of the Court.

The record in this case contains four appeals from a decree of the Circuit Court of Baltimore City passed upon a bill praying for a judicial construction and interpretation of the last will and testament of Ludwig Sellmayer. The will was made on February 6th, 1919, and the testator died on March 29th, 1925, leaving a widow, who was his second wife, two sons by a former marriage and two sons and a daughter by the second marriage, the ages of these children at that time being respectively as follows: John, forty years; Louis, thirty-six; George, twenty-seven; Edward, twenty-five; and Marie, sixteen years. The question involved in the four appeals, therefore, is: What is the correct construction of the will of the testator, thereby determining the legal effect of the language employed by the testator in his will. The task before this Court is to ascertain from the language used and in the light of the surrounding circumstances at the time of the making of the will, what was the intention of the testator as to the disposition of the property, and if such intention can be definitely ascertained, to give full effect to it, unless it contravenes some positive and well settled rule

of law or of property. In performing this duty we have no authority to ascribe to the testator a particular intention because under the circumstances we may have a conception of what the testator should have intended. To do otherwise would be, not to construe the will of the testator, but to make his will for him upon the basis of what we think should have been his intentions, and give effect to it as thus constructed. While a will takes effect from the date of the death of the testator, in construing it to arrive at the testator's intention, it must be interpreted as of the date of its execution, and in the light of the circumstances then surrounding and known to the testator. We are not at liberty to construe the will upon the basis of conditions arising after the death of the testator, and decide upon a construction which would mean practical equality among the objects of the testator's bounty, because of these subsequent occurrences, unless the same interpretation made at the time of the execution of the will would have brought about the same result. In other words, if the idea of equality can be definitely gathered from the whole will, no construction given in the light of changed conditions existing at the time it is construed, which might bring about equality, is sound, unless the same construction, given at the time of the execution of the will, would bring about a like equality. Prior decisions of this Court or other courts involving the construction of wills afford little assistance in cases like the present, except in so far as they may enunciate or restate canons or rules of construction; for the simple reason that it is seldom, if ever, that a court of last resort is called upon to construe a will in which the language is identical with that of the will construed in a former decision. The provisions of the will now under consideration are as follows:

"Last Will and Testament of Ludwig Sellmayer.

"Know All Men by these Presents, that I, Ludwig Sellmayer, of Highlandtown, in the City of Baltimore and State of Maryland, being of sound mind and memory, do hereby make and declare this to be my last will and testament, hereby revoking all other wills

or codicils by me heretofore made. After the payment
of my just debts and funeral expenses, I give, devise
and bequeath my estate as follows:

1. I give and bequeath to the Pastor of the Sacred
Heart Catholic Parish, in Highlandtown, who may
be such at the time of my death, the sum of two hun-
dred dollars to be used in offering masses for the re-
pose of my soul.

"2. I give and bequeath to my wife, Dora Sell-
mayer, all my jewelry, wearing apparel and household
effects, if she be living at the time of my death. I also
give and bequeath to my said wife the money deposited
in our joint names and account in the Savings Bank
of Baltimore as represented by pass book No. 607, 625,
and also the sum of twenty-five thousand dollars if
she be living at the time of my death.

"3. I give and bequeath to my son, John, the sum
of twenty-five thousand dollars, if he be living at the
time of my death.

"4. I give and bequeath to my son, Louis, the sum
of twenty-five thousand dollars, if he be living at the
time of my death.

"5. I give and bequeath to my sister, Josephine
Becker, the sum of five hundred dollars, if she be living
at the time of my death.

"6. I give and bequeath to my niece, Teresa Rhine,
the sum of five hundred dollars, if she be living at the
time of my death.

"7. (a) All the rest, residue and remainder of my
estate, real, personal and mixed, whatsoever and where-
soever the same may be situate and of which I may
die possessed of or entitled to, I give, devise and be-
queath to my wife, the said Dora Sellmayer, my son,
George Sellmayer and my friend, John H. Filler, the
survivors and survivor of them, to be held by them in
trust nevertheless and for the uses and purposes fol-
lowing, that is to say:

"To collect and receive the income therefrom as the
same shall become due and payable and thereout pay
all taxes, water rents, repairs and charges thereon and
generally to manage and conduct the same for the best

advantage of my estate, with full power and authority over the same and to divide the net income therefrom semi-annually, accounting from the day of my death, between my wife, the said Dora Sellmayer, and my five children, in the manner following, that is to say:

"Seven thirty-sevenths to my wife, so long as she shall remain my widow.

"Seven thirty-sevenths to my daughter, Marie.

"Seven thirty-sevenths to my son, Edward.

"Seven thirty-sevenths to my son, George.

"Four and one-half thirty-sevenths to my son, Louis.

"Four and one-half thirty-sevenths to my son, John.

"Upon the death of my said wife, her proportion of the net income of my estate, as above stated, shall be paid in equal shares to my surviving children and the issue of any deceased child or children *per stirpes* and upon the death of any of my said children who shall die with issue, the proportion of the one so dying shall be paid to the issue of said deceased child or children in equal shares but upon the death of such issue before the termination of this trust, then the proportion of the one so dying shall be paid in equal shares to my wife, if then living, and to my children then living and to the issue of other deceased child or children *per stirpes.* Upon the death of any of my said children who shall die without issue, the proportion of the one so dying shall be paid in equal shares to my wife, if then living and to my other children then living, and to the issue of other deceased child or children *per stirpes.*

"Upon my sons, John and Louis, attaining respectively the age of forty (40) years, I direct that my said trustees, the survivors or survivor of them, shall pay to each of them the sum of forty-five thousand dollars in cash or its equivalent in ground rents or other good security, in lieu of the income for them respectively hereinbefore provided. This provision, however, shall not affect their contingent interest or the interest of their issue in the share of my wife or of any of my other children in the event of the death of my said wife or any of my other children or issue of said children before the termination of this trust but

they shall be entitled to participate therein in equal shares with the survivors as hereinbefore provided.

"Upon my daughter, Marie, and my sons, George and Edward, attaining respectively the age of thirty (30) years, I direct that my said trustees, the survivors or survivor of them, shall pay to each of them the sum of seventy thousand ($70,000) dollars in cash or its equivalent in ground rents or other good security in lieu of the income for them respectively hereinbefore provided. This provision, however, shall not affect their contingent interest or the interest of their issue in the share of my wife or of any of my other children in the event of the death of my said wife or any of my other children or issue of said children before the termination of this trust but they shall be entitled to participate therein in equal shares with the survivors as hereinbefore provided.

"The provisions hereinbefore made for my said wife are to be in full satisfaction of all interest in my said real and personal estate to which she would be by law entitled in case of my dying intestate.

"After the youngest of my said children shall have been paid the sum for her or him hereinbefore provided, my said trustees, or the survivors or survivor of them, shall divide the whole of the trust assets among those then entitled to the income therefrom in the proportion hereinbefore provided.

"As the residue of my estate will include many securities which will require careful handling, I confer upon my said trustees and the survivors and survivor of them, full power to unite in any proceedings for foreclosure, or to institute the same, or to surrender in their discretion any of the securities and accept others in lieu thereof, to exchange any securities for others, to make payments of cash which may be necessary as part of or in the course of any arrangement for the protection, surrender or change in securities, to unite in any needful litigation for the protection of the securities or property and generally, to do any act which I might myself do with a view to protecting the property and to realize upon it and upon any

securities embraced in such residue, including also the
power to sell and lease for ninety-nine years renewable
forever or for less periods any part or the whole of
any real estate embraced in such rest or residue.   I
give to my said trustees and the survivors and survivor
of them full power to sell, dispose of, lease and convey
any part of or all of my estate or property not herein
specifically bequeathed and to make such sales pub-
licly or privately at their option or that of the sur-
vivors or survivor, and the purchasers or lessees there-
of shall be free from all liability for or on account of
the application of the purchase money thereof or the
rents issuing therefrom.

"I nominate, constitute and appoint my wife, Dora,
my son, George, and the said John H. Filler, executors
of this, my last will and testament.

"In testimony whereof, I, the said Ludwig Sell-
mayer, have to this, my last will and testament, con-
tained on four sheets of paper and to every sheet
thereof, subscribed my name and to this, the last sheet
thereof, I have here subscribed my name and affixed
my seal this sixth day of February in the year One
Thousand, Nine Hundred and Nineteen.

"Ludwig Sellmayer. (Seal)
"Test:    H. Beale Rollins
          Edwin F. Gibbons
          John H. Hammann."

There are apparently two general purposes which the tes-
tator had in mind, and which can be gathered from a reading
and study of the whole will: First, the purpose of equality
among his widow and children; second, the purpose of de-
laying the payment of any portion of the principal to his
children until they had arrived at such ages when, under
natural and ordinary conditions, they would be qualified to
use and manage such portions of the principal in a wise and
efficient manner.    The first purpose mentioned is to be
gathered from the provisions of the will as to the payment of
income.    It is evident that the testator considered the inter-
est on $70,000 as equivalent to 7/37 of the net income from

his residuary estate, because when he provides for the payments of $25,000 to his sons John and Louis at the time of his death, by reason of such payments of $25,000 at such time he reduces their portion of the income from the rest of the estate to $4\frac{1}{2}/37$ of said income, and when the $45,000 which the will provides shall be paid to each of the said two sons upon their arrival respectively at the age of forty years, · is paid to them, their participation in the income from the residuary estate ceases; thereby indicating that a payment of $25,000 is equivalent to $2\frac{1}{2}/37$ of the entire income, and that the payment of $45,000 is equivalent to $4\frac{1}{2}/37$ of the entire income. This is further manifested by the provision that as each one of his other three children arrives at the age of thirty, they shall be paid $70,000 each in lieu of the payments of 7/37 of the entire income from the residuary estate. The above, in our opinion, clearly demonstrates that the testator considered that the interest or income from the sum of $70,000 was equivalent to 7/37 of the entire income from his residuary estate. Equality is further indicated by the provision that if any one of his children should die before the time at which they respectively received $70,000, without leaving issue, the income theretofore provided for the one so dying is divided equally among the wife, if living, the surviving children, and the issue of any deceased child who died before he or she received the sum of $70,000; and if the wife should die or remarry before the termination of the trust, the 7/37 of the income provided to be paid to her, becomes payable equally among the children then surviving, or the issue of any deceased child who had not received at the time of his or her death $70,000 of the principal of the estate. Again, the intention of equality is evident by the fact that each child was given the same advance from the corpus of the estate, to wit, $70,000; the $70,000 being paid to John and Louis, each $25,000 at the death of the testator and each $45,000 when they arrive at forty years; and the $70,000 being paid to each of the other three children upon their arrival at thirty years of age. The second intention of the testator, stated above, is clearly evidenced by the fact that no

part of a child's share of principal should be paid to him or her until he or she has become at least thirty years of age, even though the testator had died the day after making his will.

In construing this will we must keep in mind the general plan of the testator, as evidenced by his clear intent. Upon John Sellmayer's arriving at the age of forty, which has occurred at this time, he receives from the corpus of the estate $45,000, in addition to the $25,000 left him by the third item of the will, and by reason of receiving this portion of the corpus, ceases to be entitled to the $4\frac{1}{2}/37$ of the income for him provided by the seventh item of the will, but still retaining his contingent right of income from the residuary estate in case one of the other children should die before receiving his or her $70,000, without leaving issue; or in case of the death of the widow, which, in legal contemplation and effect, has at this time already taken place by her renunciation of the will; or in case of the death of the issue of a deceased child of the testator during the term of the trust. Upon each child arriving at the age at which he or she is to receive a portion of the principal of the estate, amounting to $70,000, and his or her income thereby ceasing, the question arises: What becomes of the income represented by the fraction $4\frac{1}{2}/37$ or $7/37$, as the case may be, theretofore paid to such child? The lower court decided that such portion of the income as ceased to be payable to each child respectively, upon his or her arriving at the designated age, should be divided among the remaining children entitled to income, according to the proportion originally designated; that is to say, when John arrives at forty years of age, the $4\frac{1}{2}/37$ of income theretofore made payable to him should be payable to the remaining children and those entitled to the widow's share in the proportions originally declared in the will; or in other words, the whole income from the estate should be paid to those then entitled to income in the proportions originally designated by the testator. The appellants in Nos. 48 and 51 contend that this

construction by the lower court is erroneous and should be reversed; the correct construction, according to their contention, being that the income, as it ceases to be paid to those originally designated to receive it, should be accumulated and become a part of the corpus of the estate, payable at the termination of the trust to those entitled to the residuary estate. We think that this contention, under the circumsances of the present case, is sound. It will be seen that there is no direction in the will as to whom or when these shares of income, ceasing to be paid to the original recipients thereof, shall thereafter be paid. Neither is there any implication to be derived upon this point from the language employed. From the language of the will, one of these contentions could as well be said to be the intent of the testator as the other; therefore we must examine the consequences which may flow from each of these contentions for the purpose of determining which one accords more closely with the general intent of the testator. The time for which the trust continues is thirteen years and about eight months. If we adopt the conclusion of the lower court, during a period of nearly nine years out of a total period of between thirteen and fourteen years, Marie, the youngest child and the last one receiving her $70,000 of the corpus, would be receiving one-half of the income from the entire estate, the other half going to the widow, or now, upon her renunciation, to those entitled to her share of the income, in equal proportions; thus resulting in Marie's receiving annually during these nearly nine years more than four times the income received by any one of the other children; while if we adopt the theory of accumulation, in no one year will she receive less than the interest on $70,000, the principal which had theretofore been paid to each of the other children. As already stated, the language employed by the testator does not definitely direct what disposition is to be made of the shares of income thus ceasing to be paid to the original recipients thereof, and, there being no necessary implication which would direct it to be applied as provided by the decree below, we are of the opinion that

the interpretation which would prevent such a wide difference in the amount of income received by the testator's children during the term of the trust is the correct one, and, therefore, the income of the children "dropping out" falls into the corpus and accumulates as a part thereof, to be distributed upon the termination of the trust. In *Hurford v. Haines,* 67 Md. 240, Judge Alvey, speaking for the Court, said: "There is no principle better settled than that a general residuary bequest of personal property, contingent in terms, carries the intermediate income or interest, and that such income or interest will be required to accumulate and form part of the residue for the benefit of the party that may be ultimately entitled to such residue." In that case Judge Alvey goes on to show, by authority, that the same rule applies to general residuary bequests where the residue is made up of both real and personal property. In the case of *Equitable Guaranty and Trust Co. v. Rogers,* 7 Del. Ch. 398, the court reached a similar conclusion. In that case the testator devised and bequeathed the bulk of his estate to trustees, to use the income for the support and maintenance of his children, and when the eldest child reached the age of twenty-one years the estate was to be divided into as many parts as he had children, and then held in trust in accordance with the further provisions of the will. The income of the estate, until the division, greatly exceeded the expenditure for the support and education of the children. No direction was given as to the distribution of this excess, nor were the trustees required to hold it as a separate fund for any purpose. The court held that the excess income was a part of the corpus, and in the course of the opinion stated: "The testator evidently contemplated the existence of an unexpended income in the hands of the trustees every year, * * *; but notwithstanding this, he gave no direction to distribute this excess as income among the chosen objects of his care and bounty, either before or after the division. Neither were the trustees required to keep it as a separate fund for any general or particular purposes, as none was indicated or ex-

pressed in any clause or part of the will. * * * This excess
of income, therefore, being unrestrained by any express or
implied direction of the testator, obeyed the law or tendency
of its nature, and fell into and became a part of the parent
or general estate, in which its identity as income was com-
pletely lost."

So in this case the testator knew that as each child received
$70,000, and thereafter received no income, the income there-
tofore received by them respectively would be in the hands
of the trustees; but with this knowledge, he gave no direc-
tion to distribute this excess as income among his remaining
children or any one else; neither is there any implied direc-
tion as to such excess, either by the language of the will or in
order to carry out any clearly expressed plan or scheme of
the testator; therefore this excess of income, not being re-
strained by any express or implied direction of the testator,
falls into and becomes a part of the general residuary
estate, to be divided among those ultimately entitled to such
residue. It might also be observed that the phrase used in
the disposition of the residuary estate, to wit, "the whole
of the trust assets," is sufficiently comprehensive to include
accumulated income.

The clause of the will making final distribution of the
residuary estate is as follows: "After the youngest of my
said children shall have been paid the sum for her or him
hereinbefore provided, my said trustees, or the survivors or
survivor of them, shall divide the whole of the trust assets
among those then entitled to the income therefrom in the
proportion hereinbefore provided." The language of this
clause is indefinite, ambiguous, and susceptible of varying and
equally logical interpretations, no one of which could be
said to any more certainly indicate the testator's intention
than the others. In construing this clause the lower court
determined that the whole of the trust assets should be dis-
tributed, after the last of testator's children had reached the
age at which they were to receive $70,000 of the corpus, to
that one or those who might be then (at that time) entitled

to any portion of the income, in the proportion to which they were then (at that time) entitled to said income. The widow having renounced, those entitled to the income after the last of the testator's children had received $70,000 from the corpus, would necessarily be the testator's surviving children or the issue of a deceased child. All of the testator's children are living at the present time, and if now was the time for the distribution of the residue, under the construction placed upon this clause by the lower court, they would all receive an equal share by such distribution. Such a result would not work any injustice among the testator's children, and might fairly be said to be in accord with an apparent general intent of the testator. However, by the plain terms of the will, the trust is to continue until the youngest of his children reaches thirty years of age, which is for more than twelve years, and which time could not possibly be shortened except by the death of the youngest child before she reaches thirty. It is possible that her death could occur before that time, and it is equally possible, and altogether probable, that she will live until she attains that age; which, as stated, would mean that the trust would continue for a period of more than twelve years. During this period, other contingencies directly affecting the distribution of the residuary estate may happen, such as the death of any one of the testator's children before they receive their $70,000 from the corpus, leaving issue, excepting John. The testator certainly contemplated such a contingency, for he provided what should happen to a child's share of income in such event. Under the decree of the lower court, if any such contingency did happen, as for example the death of Edward before he reached the age of thirty, leaving issue, such issue would, from the death of Edward, be entitled to 7/37 of the entire income up to and when the youngest child of the testator reached the age of thirty, and such issue of Edward, and those entitled to the widow's portion of the income, would be the only ones *then* entitled to the income and would receive the distribution of the whole of the trust assets in the

proportion in which they were *then* entitled to such income, which would be one-half to the issue of Edward, plus 1/10 as their father's share by reason of the widow's renunciation; thus resulting in a distribution of the trust assets of 6/10 thereof to the children of one child of testator and 1/10 to each of testator's children. The only testimony which the record discloses as to the knowledge on the part of the testator in respect to the amount of his estate, shows that he believed himself to be worth not quite a million dollars, but pretty close to a million dollars. If this testimony be true, and it is uncontradicted, it indicates that he knew at the time of making his will that the distribution of $70,000 of the corpus to each of his children would consume little more than one-third of his estate; and it is difficult to believe that the testator intended that the language distributing the residue of his estate should be so construed as by any possibility to result in giving a grandchild six times as much thereof as a child would receive. It must be admitted that a literal construction of the language employed in this clause of the will could bring about such a result; but when such construction brings about a result so foreign and far afield from any apparent intention of the testator, to be gathered from the whole will, we are of the opinion that such interpretation should not be adopted. The phrase in this clause of the will "in the proportion hereinbefore provided," in our opinion, could only properly refer to the one table of proportion definitely stated by the testator, being the table distributing the income to his children, beginning immediately after his death; and it would be illogical to believe that the testator, at the time of making his will, had in mind the intricate and involved scheme, as adopted by the lower court, in determining who would be entitled and in what proportions they would be entitled to receive the distribution of the trust assets at the termination of the trust. We are, therefore, of the opinion that the phrase "in the proportion hereinbefore provided" refers to the table of distribution dividing the income into 37ths, and this phrase qualifies the word "then" preceding it in the clause "then

entitled to the income," so as to require the word "then" to be read "up to then" or "heretofore." It will be noted that the only discrimination as to income made by the testator among his children was that his two elder sons, John and Louis, were to receive 4½/37 each, while his other three children were to receive 7/37 each thereof; but it will also be remembered that the two sons who were to receive 4½/37 had previously been given specific bequests of $25,000 each, and that when they received a sufficient additional sum from the corpus which would amount to $70,000, their income of 4½/37 should cease, as his other children's should cease when each of them received $70,000. We are of the opinion that the bequests of $25,000 received specifically by John and Louis are equivalent and were intended by the testator to be equivalent to 2½/37 of the income from his estate, and that in determining the proportions in which each child was entitled to the income, these $25,000 bequests should be considered as standing in the place of and equivalent to 2½/37. This being true, in our opinion, the proper construction of the clause in the will distributing the residue, after the termination of the trust, should be as if it read: "Shall divide the whole of the trust assets among those heretofore entitled to the income therefrom in equal proportions." We are satisfied that this interpretation is in harmony with the general intent of the testator, as gathered from the language employed in the whole of the will. It being seen that our views differ from those of the lower court, its decree must be reversed.

> *Decree reversed in part, and cause remanded in order that a decree may be passed in accordance with the views herein expressed, costs in both courts and counsel fees as decreed by the lower court to be paid out of the estate.*