HEBDEN, ADMINISTRATOR, ET AL. *v.* KEIM ET AL.

[No. 204, October Term, 1949.]

*Decided July 19, 1950.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON and HENDERSON, JJ.

*K. Thomas Everngam* and *Walter Y. Anthony*, with whom was *W. LeRoy McKinley* on the brief, for appellants.

*Harry E. Clark*, for appellees.

DELAPLAINE, J., delivered the opinion of the Court.

The purpose of this suit is to construe the will of Mrs. Sallie May Carter, a resident of Caroline County, who died in September, 1921. The suit was filed by the Denton National Bank, administrator d.b.n. c.t.a. of her estate.

Mrs. Carter executed her will on April 3, 1919. At that time she was 59. Her only heirs at law were her husband, Edward B. Carter, 61, and an unmarried brother, Caleb Scattergood, 67. The clause to be construed bequeathes the sum of $8,000 to her husband for life, and then provides: "and from and after his death, I give, devise, and bequeath said sum of $8,000 to my brother, Caleb Scattergood, absolutely, provided, however, if my said brother, Caleb Scattergood, should die before both myself and my said husband, Edward B. Carter, then in that event, I give, devise and bequeath said sum of $8,000 as a part of my residuary estate."

Scattergood died in 1928, leaving his entire estate to his two intimate friends, Caleb Scattergood Hebden and William Hebden. Carter died in 1948. It was contended by Scattergood's legatees that, since the testatrix gave the principal sum of $8,000 to her residuary estate in the event that her brother should die "before both" herself and her husband, and since she died before her brother, the bequest belonged to her brother's estate.

But the chancellor held that the testatrix intended the bequest to go to her residuary estate if her brother died before the time when both she and her husband were dead; and he accordingly decreed that the bequest went to the residuary legatees, Howard Keim, Mary Keim Wagner, Frank Keim, Jr., and Helen Keim Wilson, cousins of the testatrix. Caleb Scattergood Hebden and Martha Hebden, widow and sole heir of William Hebden, appealed from the decree.

The cardinal rule for the construction of a will is to give effect to the intention of the testator according to the meaning of the words he has used deduced from a consideration of the whole will read in the light of the surrounding circumstances existing at the time of its execution. *Women's Foreign Missionary Society etc., v. Mitchell,* 93 Md. 199, 202, 48 A. 737, 53 L. R. A. 711; *Ridgely v. Ridgely,* 147 Md. 419, 422, 128 A. 131; *West v. Sellmayer,* 150 Md. 478, 133 A. 333; *Gent v. Kelbaugh,* 179 Md. 343, 18 A. 2d 595; *Jones v. Holloway,* 183 Md. 40, 36 A. 2d 551, 152 A. L. R. 933; *Inasmuch Gospel Mission v. Mercantile Trust Co.,* 184 Md. 231, 40 A. 2d 506; *Colton v. Colton,* 127 U. S. 300, 8 S. Ct. 1164, 1168, 32 L. Ed. 138. In some legal instruments the use of technical words and phrases is required by the long usage of the law to accomplish particular effect. But the law does not require a testator to use technical words or any particular form of words in his will to convey his intention. This difference grew from the fact that many wills had been made when testators were *in extremis* and without the aid of counsel. *Beall's Lessee v. Holmes,* 6 Har. & J. 205, 207; *Zimmerman v. Hafer,* 81 Md. 347, 358, 32 A. 316. In approving the liberal American testamentary construction in preference to the strict construction of the English courts, Chief Justice Taney said in *Bosley v. Wyatt,* 14 How. 390, 397, 398, 55 U. S. 390, 14 L. Ed. 468, 471: "Undoubtedly there are fixed rules of law in relation to the construction of certain words and phrases in a will, which have been established by a long course of judicial decisions; and which have become land-

marks of property and cannot be disturbed. * * * It has not been the disposition of courts of justice, in modern times, to extend the application of these rigid technical rules; but rather to carry out the intention of the testator, when no fixed rule of legal interpretation stands in the way. And this is, and ought to be, more especially the case in this country. For wills here are most frequently drawn by persons unacquainted with legal phraseology, and ignorant of the meaning which the law attaches to the words they use. The property devised is, perhaps, in the greater number of cases, the fruits of the testator's own industry."

In this case the testatrix left her husband the income on $8,000 during his lifetime. She then gave the entire sum to Scattergood, with the proviso that if he should die before both herself and her husband, then the sum was to become a part of her residuum. It is entirely clear that if her husband had died before her death, the money would have belonged to Scattergood absolutely upon her death. It is also beyond question that, since she died before her husband, the remainder, i.e., the principal sum of $8,000, vested in Scattergood, subject to divestment in the event that he died before the death of the widower. We are of the opinion that it was not the intention of the testatrix to give the sum of $8,000 to her brother's estate in case she died before his death. Possibly she did not contemplate such an eventuality, especially since she was eight years younger than her brother.

In any event, a bequest to a certain person provided that, in the event he should die before the death of the testator and his wife, then the bequest should go to some one else, is not an unusual form of testamentary disposition. In making such a disposition the testator usually has in mind the time when he and his wife are both dead. A bequest of this nature was included in a will made by Peter T. Hawley in Indiana. The exact provision read as follows: "In case the said Charles O. Hawley and his wife are both dead before the death of my wife and

myself then I direct that the share so given to him or her shall be taken by their descendants." It was held in that case that the beneficiaries were to be determined at the time of the death of the testator's wife in case she survived him, and that the ultimate ownership of the estate should not be vested in any person other than the testator and his wife "until such time as they were both dead." *Hamilton v. Williams*, 111 Ind. App. 148, 37 N. E. 2d 695, 697.

One of the familiar rules for the construction of wills is that the Court should consider not only the actual words used in the will but also the situation of the testator and his relations with the objects of his bounty. *Robinson v. Mercantile Trust Co. of Baltimore*, 180 Md. 336 24 A. 2d 299, 138 A. L. R. 1427; *Jones v. Holloway*, 183 Md. 40, 36 A. 2d 551, 152 A. L. R. 933. Mrs. Carter made bequests to distant relatives and friends and also left $1,000 to each of two charities in Philadelphia, but she made no mention of Caleb Scattergood Hebden or William Hebden. Moreover, the unusual length and thoroughness of the residuary clause are indicative of a desire to prevent any lapsed legacies from going to persons who were not specifically named in the will. Additional light was thrown upon the intention of the testatrix by an exemplified copy of Scattergood's will, which was admitted to probate in the office of the Register of Wills of the City of Philadelphia in 1928. By that will, made in December, 1919, Scattergood left his entire estate to Caleb Scattergood Hebden and William Hebden. It has been suggested that it is apparent from this will that animosity of the Hebdens led to the estrangement of Scattergood from his sister. However that may be, it is certain that he grew hostile toward her in 1919, for in his will he said: "Under no circumstances do I want my sister, Sallie May Carter, or her husband, Edward B. Carter, to have any share in my estate or have any authority as to the disposal of my remains." Thus it is probable that Mrs. Carter was more desirous of giving the bequest to her cousins than to Caleb Scattergood

Hebden and William Hebden, who were not related to her and who even then may have been alienating the affection of her brother.

Appellants insisted, however, that, although it may have been the wish of the testatrix to give the bequest to her cousins rather than to the Hebdens, the Court has no authority to change the language of the will. We recognize, of course, that the Court, in construing a will, is governed, not by what the Court may think the testator wanted to say, but by what his words actually meant, because his words were designed to express his intention. *Larmour v. Rich,* 71 Md. 369, 381, 18 A. 702; *Abell v. Abell,* 75 Md. 44, 58, 23 A. 71, 25 A. 389; *Ahalt v. Hersperger,* 75 Md. 88, 91, 23 A. 66; *Slingluff v. Johns,* 87 Md. 273, 276, 39 A. 872; *Robinson v. Bonaparte,* 102 Md. 63, 71, 61 A. 212; *Schapiro v. Howard,* 113 Md. 360, 370, 78 A. 58, 140 Am. St. Rep. 414. The expressions in a will must be interpreted in their ordinary and grammatical sense; and if the language is plain and unambiguous, the Court cannot give it a different meaning in order to give effect to a mere conjecture as to the testator's intention. Where, however, the intention is evident from the context of the will, but is made obscure by an inaccurate or inapt expression, the Court may insert, delete, correct, or transpose words and phrases in order to remove the ambiguity and thereby effectuate the testator's intention. *Janney v. Sprigg,* 7 Gill 197, 202, 48 Am. Dec. 557; *Creswell's Lessee v. Lawson,* 7 Gill and J. 227, 248; *Slingluff v. Johns,* 87 Md. 273, 280, 39 A. 872. Moreover, the Court in testamentary construction should not make fine distinctions as to the meaning of words and be too exact as to the grammatical construction of sentences.

In view of the evident intention of the testatrix, we construe her will to mean that the bequest goes to her residuary estate in case her brother should die before the time when both she and her husband were dead.

*Decree affirmed, the costs to be paid out of the residuary estate.*